ELIZABETH COMEGYS, *Adm'rx of* WILLIAM COMEGYS, *vs.* THE STATE OF MARYLAND, *use of* ELLEN DYCKES.— *December,* 1838.

In respect to non-resident infant defendants to a bill in chancery, the acts of assembly of this state, have substituted the publication for the summons, in the discretion of the chancellor, and give the former all the efficacy of the latter, without any appearance by guardian.

Where the jurisdiction of the chancellor to decree upon the subject matter of the bill is clear, his omission to comply with the requisitions of an act of assembly, would be error, for which the decree might be reversed upon appeal, though such omission cannot affect the jurisdiction of the court.

Nor does the jurisdiction depend upon the sufficiency or insufficiency of the proof, that also being a question to be decided on appeal by some of the parties to the suit.

Trustees are generally removed by proceedings instituted for that purpose ; but cases may occur in which it would be proper to remove a trustee when the bill was filed for a different object, though for an erroneous exercise of the power of removal, the remedy is by appeal alone.

The bond of a trustee, conditioned to invest or hold the property or money committed to his care, is liable for money in his hands at the time of its approval by the chancellor, and money paid to him before, will, in the absence of evidence to the contrary, be presumed to be in his hands at that time.

It is not necessary for the purpose of charging the bond to shew an order of the court for the payment of the money to the trustee—whether given to him in virtue of an order or not, the bond is equally responsible.

The liability of a trustee to pay interest depends upon the character of the trust, and the circumstances attending its administration.  Where a trustee holds money in his hands for fifteen years, without furnishing any account of the manner in which it has been employed, he is to be treated as if he had actually used the fund, and consequently chargeable with interest as a matter of right.

APPEAL from *Baltimore* county court.

THIS was an action of *debt,* brought by the appellee against the appellant on the bond of *Joseph Dyckes, Matthew French* and *William Comegys,* the intestate of the defendant below.   The bond was dated 21st May, 1818, and recited that *Joseph Dyckes* "hath been appointed by the honourable the chancellor of Maryland, trustee for *Ellen Dyckes,* wife of *James Dyckes,* and the children of the said *James* and *Ellen,* which they now, or may hereafter have.   Now the condition, &c. is, that if the above bounden *Joseph Dyckes,* do and shall well and faithfully perform the trust reposed in him as aforesaid, and shall well and truly invest or hold the property or money committed to his care, in trust for the sole and separate use of the said *Ellen,* wife of *James,* during her natural life, and afterwards for the use and benefit of all and every the child or children which the said *James* now hath, or may hereafter have by the said *Ellen,* in equal proportions, share and share alike, then," &c.

To a declaration on the penal part of this bond, the defendant pleaded :

1st.   That the supposed writing obligatory was never accepted by the state of Maryland, otherwise than that one *James Shaw,* wrote upon the same, the words, "*Bond approved, 3d August,* 1818, *James Shaw,*" and that *William Kilty,* then chancellor of Maryland, wrote upon the same, the words, "*the above confirmed.   Wm. Kilty, Chan.* 8th, 1818."   And the said defendant saith that neither the said *James Shaw,* nor the said *William Kilty,* was the agent of the state of Maryland, to accept of the said bond, or authorized so to do ; and so the said defendant saith, that the said supposed writing obligatory is not the deed of the said *William Comegys,* and this, &c.   The plea was verified by the oath of the defendant.

2d.   That the said *Joseph Dyckes,* hitherto, hath well and faithfully observed, performed, fulfilled, and kept, all and singular the matters and things in the condition of the said

supposed writing obligatory mentioned and contained, which he according to the said condition, ought to have observed, performed, fulfilled, and kept, and this, &c.

3d. That no trust was ever actually reposed in the said *Joseph Dyckes*, and that no property or money was ever committed to his care, in trust for the sole and separate use of *Ellen Dyckes*, wife of *James Dyckes*, during her natural life, and afterwards for the use and benefit of all and every child or children which the said *James Dyckes* had or might have by the said *Ellen*, and this, &c.

To those pleas the plaintiff replied as follows :

To the first plea, that after the making of the said writing obligatory, and before the impetration of the original writ in this cause, to wit: at, &c. the said writing obligatory was accepted by the said state as the deed of the said *William*, and this the said state prays may be inquired of by the country, &c. To the second and third pleas, that after the making of the said writing obligatory, and before the impetration of the original writ in this cause, to wit, on the 23d May, 1818, at, &c. the said *Joseph Dyckes* received from a certain *Samuel I. Donaldson*, trustee for the sale of the property mentioned in certain proceedings in the high court of Chancery of Maryland, wherein *Luke Tiernan* was complainant, and *James Dyckes* and others defendants, the sum of $1430 12, for the use of said *Ellen Dyckes* during her life, and after her death for the use of the children of the said *Ellen* and *James Dyckes*, which sum of money he the said *Joseph*, ought to have applied to the use and for the benefit of the said *Ellen* during her life, but the said *Joseph* regardless of his duty as trustee as aforesaid, the said sum of money so received by him as trustee as aforesaid, hath altogether refused and neglected to apply to the use and for the benefit of the said *Ellen*, as he was bound to do, and so the said state saith, that the said *Joseph* hath not faithfully performed and executed the trust reposed in him as aforesaid, and this the said state is ready to verify.

Issue was joined on the first plea.

To the replication to the second and third pleas, the defendant rejoined, that the said *Joseph Dyckes* did not receive the sum of money in the said plea by way of replication mentioned, or any other sum of money for the use of the said *Ellen Dyckes* during her life, and after her death for the use of the said children of the said *Ellen* and *James Dyckes*, in manner and form as in the said last mentioned plea by way of replication is alleged.

Issue was also joined on this rejoinder.

EXCEPTION.—At the trial of the cause, the plaintiff to support the issue on her part, gave in evidence a copy of the bond declared on; and also the record of the proceedings in chancery in a certain cause, in which *Luke Tiernan* was complainant, and *James Dyckes* and *Ellen* his wife, and their infant children, and *George Schroeder*, trustee for the said *Ellen*, were defendants. The object of the bill, was to sell certain real property, which *James Dyckes* had mortgaged to *Luke Tiernan*, on the 26th February, 1813, and subsequently assigned to *George Schroeder*, in trust for his wife *Ellen*, for life, and after her death for the benefit of her infant children. The adult defendants answered the bill by a joint answer, and submitting to a sale prayed that *Schroeder* might be discharged from his trust, and a new trustee appointed. The infants who were non-residents were made parties by publication; a sale was decreed on the 6th January, 1818, and a trustee appointed to carry it into effect. On the 3d March the trustee reported the sale, as made on the 28th February to *Joseph Dyckes* for $1850. This sale was finally ratified and confirmed. On the 16th May, 1818, the auditor of the court made his report, upon the distribution of the proceeds of sales; awarding $1430 to the use of *Ellen Dyckes* for life, with remainder to her children. This account was confirmed, and *Joseph Dyckes* was appointed trustee in the place of *Schroeder*. *Dyckes* was ordered to give bond, in the penalty of $2860. *Dyckes*, with Matthew French and *William Comegys* as his sureties, gave bond, the 21st May, 1818, which was approved on the 3d August,

1818, as stated in the defendant's first plea to this action. It appeared that on the 23d May, 1818, *Joseph Dyckes*, the new trustee for *Ellen* and her children, passed his receipt to the trustee who made the sale for the amount awarded under the audit of 16th May, 1818, acknowledging in his receipt that he had been appointed trustee for them. Upon this proof, the defendant prayed the court to instruct the jury that the plaintiff is not entitled to recover.

1st. Because the chancellor had no authority or jurisdiction to remove *George Schroeder* from his trust, to which he was appointed by deed, and appoint a successor, unless upon a proceeding instituted for that purpose, in which all the parties interested have an opportunity of being heard, and in the proceeding offered in evidence, no such opportunity was afforded to the infant *cestui que trusts*.

2d. Because the chancellor had no authority or jurisdiction, to require, accept, or approve a bond, given under the circumstances under which the bond appears from the evidence in the cause to have been given.

3d. Because the bond was not approved, or pretended to be approved, until *after* the money which is alleged in the plaintiff's pleadings to have been received by the trustee, had been actually paid to him, and consequently the money so paid, was received by him before he was trustee, and when he had no right to receive the same, so as to charge the sureties on his official bond as trustee by the receipt thereof.

4th. Because the record given in evidence, shews a case wherein the chancellor had no jurisdiction to pass a decree for the following reasons, to wit:

1st. Because the infant defendants in the cause contained in the said record were not summoned, and did not appear by guardian in the manner prescribed by the act of assembly in such case made and provided.

2d. Because the said record is of a cause of which a foreclosure or sale of land is applied for, in which infants were interested, and a decree for the sale of the said lands

made, although no bond was given to refund to the said infants the whole or any portion of the money raised by such sale, in case the said infants, within one year after their arrival at age, should make appear to the satisfaction of the chancellor that there was fraud in obtaining the mortgage deed, or that no deed was really executed, or that the debt claimed, or so much as decreed to be paid, was not really due, or any bond which was, or was intended to be, a compliance with the provisions of the act of 1785, ch. 72, sec. 2.

3d. Because no proof was offered in said cause of the complainant's debt.

Which directions the court refused to give. The defendant excepted.

The defendant then moved the court to instruct the jury, that the plaintiff is not entitled to the principal sum of $1430 12, but is merely entitled to the income or revenue accruing from said sum of $1430 12, up to the institution of the suit.

The plaintiff's counsel then moved the court to instruct the jury, that the plaintiff is entitled to their verdict, for the amount of arrearages of income on the fund received by *Joseph Dyckes,* due at the time when this suit was brought, with interest on each instalment of annual income from the day it became due until this time.

The defendant's counsel prayed the court to instruct the jury, that they may find such an amount of interest as they may deem it proper to allow against the defendant, in view of the lapse of time since the bond in suit was given, and of the absence of all proof to shew any demand made by the plaintiff on the principal or sureties for the payment of said income or revenue, from the date of said bond until the writ in this case was impetrated.

The court (*Purviance, A. J.*) refused the said last mentioned prayer of the *defendant,* and granted the prayer of the plaintiff. The defendant excepted to the refusal of the court to grant her said prayers above stated to have been refused, and to the granting by the court of the said prayer of the plaintiff.

The verdict and judgment of the court below being for the plaintiff, the defendant prayed the present appeal.

The cause was argued before BUCHANAN, Ch. J., STEPHEN, ARCHER and DORSEY, Judges.

D. STEWART and H. D. EVANS, for the appellants, contended :

That the plaintiff is not entitled to recover—because,

1. That a trustee appointed by deed cannot be removed, and a successor appointed, unless upon proceedings instituted for that purpose, in which the parties concerned may be heard.

2. That the chancellor had no authority to require, accept, or approve a bond, given under the circumstances detailed in the evidence in this cause.

3. That the bond here was not approved until after the money, which is alleged in the plaintiff's pleadings to have been received by the trustee, had been actually paid to him, and consequently, having received the money before he was trustee, the sureties on the bond are not bound for the same.

And as showing that the chancellor had no jurisdiction in the case, that defendant will further contend, that his decree in the premises is a nullity—because,

1st. The infant defendants in that cause, were not summoned, and do not appear by guardian in the manner prescribed by the act of assembly.

2d. Because the cause related to the lands of infants to be sold, and no bond was given for the future indemnity of such infants, under the act of 1785, ch. 72, sec. 24.

4. That under the circumstances, the county court should have left the question of interest to the jury, to be allowed or not, in their discretion.

GLENN, for the appellees,

Referred to the acts of 1790, ch. 38, sec. 2, 3, and 1799, ch. 79, sec. 4, to show the power of the court over non-resident infants, and the authority to make them parties by publication.

He insisted that the court could remove a trustee. 10 *Law Lib.* 94. And that any of the *cestui que trusts*, of full age, might invoke the power of the court to appoint a trustee. That neither the trustee nor his security, could object to his appointment. The recital of their bond estopped them. *Lainson vs. Tremere*, 1 *Adol. and Ellis*, 792. 28 *Serg. and Low.* 219. *Shelley vs. Wright, Willes's Rep.* 9. *Hosier vs. Searle*, 2 *Boss. and Pull.* 299. The first payment was authorized by the bond, for upon ratification or approval, the bond relates to its date, and covers intermediate receipts. The payment by the first trustee to *Joseph Dyckes*, was only what the court would have ordered. *Lee, et al, vs. Stone & McWilliams*, 5 *Gill and John.* 1. It is therefore valid without an express order.

The court had a general jurisdiction to order a sale, and a failure to comply with the directions of the act of 1785, regulating the manner of the sale, gives a right of appeal, but cannot vacate the decree when offered as evidence.

The question of interest was properly decided. It was the duty of the trustee to invest, and pay over the interest annually. The object is to secure the annual payments, and the default clearly exists. This entitles the party to interest. The time is fixed and certain by operation of law. *Ringgold vs. Ringgold*, 1 *Har. and Gill*, 11. *Raphael vs. Boehm*, 11 *Ves.* 92, 104. *O'Keefe vs. Jones*, 13 *Ves.* 412.

ARCHER, Judge, delivered the opinion of the court.

It is contended, that the bond upon which this suit has been brought, is void for want of jurisdiction in the Chancery court, to decree in the cause, or to appoint a trustee in the place of the former trustee, *Mr. Schroeder*.

As to the decree, it is contended, that the Chancery court had not jurisdiction of the persons of the infant defendants, as they had not been summoned. In answer to this objection, it is only necessary to say, that the infant defendants appear from the records to have been non-residents, and the acts of assembly have substituted the publication in place of

the summons, at the discretion of the chancellor, and give the former all efficacy of the latter, without any appearance by guardian.

It is secondly objected that, the chancellor had no jurisdiction, because no bond was taken, to refund to the infants the amount of the purchase money, in case of a sale, should the infants within one year after arrival at age, make appear to the chancellor, that the mortgage was obtained by fraud, or that no deed was executed, or that the money secured by it, or so much as was claimed, was not due, in compliance with the act of 1785, ch. 72, sec. 2. The jurisdiction of the chancellor was clear and undisputed, to decree upon the subject matter of the bill, and upon its being filed, and parties made, his jurisdiction at once attached, and if this were a case requiring a refunding bond, the failure of that officer to comply with the requisition of the law, would have been error, for which the decree might have been reversed, but in no manner affected the jurisdiction of the court.

Again, it is urged against the jurisdiction, that no proof whatever was taken of the claim; whether there is any proof, or sufficient proof to support the allegations of a bill, is always a question to be decided, on appeal taken by some of the parties in the suit. It is not the proof which gives jurisdiction, but the subject matter of the bill, and nature and character of the claim. The jurisdiction of the Chancery court appointing the trustee, and in taking and approving the bond, has been questioned on account of the character of the proceedings in which the appointment was made.

Trustees are generally removed and others substituted by original proceedings, filed for that purpose. Cases may often occur where they may be removed without such special proceedings, and in the record of chancery proceedings offered in evidence in this cause, there being proper parties before the court, and all the *cestui que trusts* before the court, circumstances might occur where it would be clearly the duty of the court to substitute a trustee. As if it had been proved, after the trust fund had been converted into money,

that the original trustee had removed from the jurisdiction of the state, or the United States, that he was entirely unworthy of trust, and to make a stronger case, had become so, after the execution of the grantor's deed, creating the trust.   Such a case would have imperiously demanded the substitution of a new trustee.   The existence of such possible, nay, probable cases, and the nature and character of the redress sought, clearly demonstrates the jurisdiction of the court.   It is true there is no proof in the record, that such a state of facts did exist, but the absence of proof does not affect the question, and if in the case before the court, there was error in substituting a trustee, which we do not mean to assert, still the remedy was by appeal alone.

Whether it was competent for the defendant, who represents one of the sureties in the bond, which on its face recites the appointment of his principal as trustee, by a decree of the court of Chancery, to make such objections, it is unnecessary for us to determine, as we think there is clearly nothing in any of the objections taken to the jurisdiction of the court of Chancery, either in passing the original decree, or in appointing a substituted trustee, or in his taking and approval of the bond.

It is further objected to a recovery on this bond, that the money was received by the principal in the bond, before its approval by the chancellor, and before he was clothed by its approval, with the character of a trustee.   If the trustee had in his hands the trust money, at the time of the approval, the bond immediately operated upon it, for by its condition, he was bound to take care of the fund committed to his care, and as it was paid to him before, we must presume in the absence of evidence to the contrary, that it still remained in his hands at the approval of the bond.

That no order was ever passed to pay the money over to the trustee, cannot affect his responsibility, if in fact it was paid.   The object of the bond was to secure to the *cestui que trusts*, the very sum which was paid, and whether he received it in virtue of the chancellor's order, or the voluntary act of

the trustee who made the sale, he is equally responsible upon the trustee's bond. An order for the payment of the fund, in court to him, was a matter of course, and its payment, as is apparent from the chancellor's orders, was only delayed until the execution of the bond.

We by no means think there is a controlling analogy between the case of 7 *Har. and Jo.* 444, and the present.

In that case, the duty of the trustee was to sell the land, and receive the purchase money, unless before a given day the mortgage debt was brought into chancery. The trustees never sold the land, but the mortgagor instead of bringing the money into court, as he had liberty to do, paid to the trustee the money, who would acquire no right to receive it, until the event had happened directed by the decree, the sale of the land. But in the cause now before the court, by the express terms of the bond, the trustee was responsible for investing or holding the property in money, committed to his care in trust, for *Ellen Dyckes*, during her natural life, and for her children, &c. after her death; and it is apparent from the proceedings, that at any time after the payment to him of the trust money, by *Donaldson*, when the bond was approved, that the chancellor would have ratified what was done, and the case would then stand, as if at the moment the bond had been approved. The chancellor's confirmatory order had passed, and in such a case, the fund being in the hands of the trustee, (and we are bound to believe, there being no evidence to the contrary, that it remained in his hands,) the bond would stand as a security for its faithful administration.

The right to take the bond in the name of the state grows out of the character of some of the possible *cestui que trusts*, who could in no other manner have been so well secured.

The last question submitted is, whether interest is chargeable, and if so, in what manner.

The liability of the trustee to pay interest must be determined from the character of the trust, and the circumstances attending its administration. The trust money came into

the hands of the trustee in the year 1818, fifteen years before the institution of this suit, and was by the terms of the trust, to be held or invested for the use of *Ellen Dyckes*, the plaintiff, for life, and after her death for the use of her children, born or to be born.   As a faithful trustee, bound to carry out the intention of the trust, it was his duty to have sought the aid of a court of chancery and its directions with regard to the disposition of the trust money, and not have permitted it to lie in his hands for a period of fifteen years, only serving to benefit the trustee himself, by giving him additional credit in proportion to the extent of the trust fund, while in the mean time, the life of the *cestui que trust*, who during the whole period would have been entitled to the fruits of the fund, was wearing out without deriving any benefit from her life estate.   If such a course could be sanctioned in a court of equity, the office of trustee would be greatly sought after, the benefits of trusts enuring to the trustee's advantage, and not that of the *cestui que trusts*. No evidence whatever was offered by the defendant to shew what disposition the trustee had made of the trust money. Under such circumstances the conduct of the trustee is left open to the most unfavourable presumptions, and if contrary to his duty, he had the funds in hands for so long a time without causing it to produce any fruits, or has used the fund, he is equally liable to the *cestui que trust*, for the interest which the fund would have yielded, and for interest on that sum according to the terms of the plaintiff's prayer, which was granted by the court.   By the terms of the trust, *Ellen Dyckes* was clearly entitled annually to the interest.   As the principal was reserved for the use of her children, the trust could in no other manner have been carried out so as to be beneficial to her, and subserve the purposes and intentions of the trust, nor could she in any other manner be indemnified.

In *Newson and Douglass*, 7 *H. & J.* 453, this court say, that the question of interest according to the long settled practice of the courts, is referrible to the jury, but they at the same time designate certain exceptions to that general

rule, within which, as we apprehend, this case falls. And the case of bonds, contracts in writing, to pay money on a day certain, or contracts for the payment of interest, or when money claimed has been actually used, are pointed out as cases illustrating the exceptions to the rule. The trustee in this case having retained the fund claimed for so long a period of time, and furnishing no account of the same, he is to be treated as if he had actually used the fund claimed; and so would be chargeable as a matter of right with interest. The case in 2 *Gill and John.* 430, will not be found to conflict with these views. That was a suit instituted on an appeal bond, and the plaintiff sought to recover the amount of costs on the judgment appealed from, and the value of the goods replevied, for which in the County court he had obtained a judgment for a return irrepleviable, and which was affirmed in the court of Appeals. The question of interest on the costs and on the value of the goods was left to the jury. There was nothing in the terms of the judgment which gave the plaintiff interest, either on the costs or on the value of the goods, nor any imperative obligation of law to pay interest, and that case was therefore properly put to the jury, to allow interest or not, according to the equity and justice of the case on consideration of all the circumstances attending it.

Finding no error in the opinions of the County court expressed in this case, we affirm their judgment.

JUDGMENT AFFIRMED.