(Filed 21st June, 1894.)

---

ANNIE STEIN, BERTHA FRIEDENWALD and HARRY FRIEDENWALD, her husband, and LOUIS STEIN *vs.* ANNIE STEIN and others, Executors, and others.

### *Construction of Will.*

A testator directed his executors to divide all the rest, residue, and remainder of his estate and property, of every nature and kind, into four equal parts or portions. He then devised and bequeathed " one of said equal parts or portions," in trust for the sole and separate use and benefit of his daughter for life, and at her death in further trust to be conveyed and assigned to all her children then living, and the issue or descendants of any deceased child. The three other equal parts or portions, he devised and bequeathed upon the same terms, in like trust for the benefit of his three sons, respectively, and their children and their issue. HELD:

That the property was to be divided into four equal portions, to be held and managed as four several and distinct trusts.

APPEAL from the Circuit Court No. 2 of Baltimore City.

This appeal was taken from a *pro forma* decree of the Court below (WICKES, J.) adjudging that under the last will of Samuel Stein, all the rest and residue of the testator's estate, both real and personal, vested in Annie Stein, Simon H. Stein and Harry Friedenwald, trustees under said will, as tenants in common, and that they should hold the same as of one trust estate for the use and benefit of the *cestuis que trust*, as provided for in said will, and that it should not be required that said executors should divide the said rest and residue of said estate into four equal parts and hold each part as a separate trust estate. The case is stated in the opinion of this Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, McSHERRY, BOYD and BRISCOE, J.

*Bernard Wiesenfeld,* for appellants and appellees.

PAGE, J., delivered the opinion of the Court.

This appeal is from the *pro forma* decree of the lower Court upon a special case stated. Samuel Stein by his last will, after making certain bequests, devised as follows: "All the rest, residue and remainder of my estate and property, of every nature and kind, whether real, personal or mixed, wheresoever situate, as well that which I now have, as that which I may have, be possessed of, or in any manner entitled to at the time of my death, I order and direct my executors hereinafter named, or the survivor or survivors of them, to divide into four equal parts or portions." He then devises and bequeaths "one of said equal parts or portions" to his wife Annie Stein, his son Simon H. Stein, and his son-in-law Harry Friedenwald, and the survivors of them, &c., in trust, for the sole and separate use and benefit of his daughter Bertha Friedenwald for life, "so that she be suffered and permitted for and

during the said term of her natural life, to have, hold, possess and enjoy the same, and every part thereof, and to receive the clear rents, issues and profits therefrom, without, however, the power of anticipating, charging or in any manner encumbering said clear rents, incomes or profits, and so that neither the said property nor the rents, &c.'"; and, at the death of said daughter, in further trust to convey and assign the "said one-fourth part, share and share alike," to all her children then living and the issue or descendants of any deceased child, &c., &c. Each of the three other equal parts or portions, by separate clauses, being the sixth, seventh and eighth, are then successively devised and bequeathed upon the same terms to the same trustees in like trust for the benefit of his sons Louis and Simon and Julian Stein respectively, and their children and their issue. By the tenth clause power is given to the trustees and their successors in the trust, "from time to time, as they may deem it expedient and for the benefit and advantage of my estate, to sell and dispose of, grant, assign or convey such portions of my estate as may be necessary for the purpose of making *changes of investments* thereof, &c." By the eleventh clause provision is made for the safe keeping of his securities; they are to be kept by the trustees in a safe deposit box, and not to be taken from it except in the presence of at least two of his trustees; and finally he appoints the same persons whom he had already named as his trustees, to be his executors. This will, like all others, must be construed so as to effectuate the intent of the testator, unless some clear rule of law makes it impossible so to do. We think it clear from the terms employed that the testator intended his property to be divided into four equal portions, and to be held as four several and distinct trusts. His language is too explicit for doubt: "All the rest and residue and remainder of my estate and property, of every nature and kind . . . . I *order* and direct my executors hereinafter named . . . . to divide into *four equal parts or por-*

*tions,*" and then "one of said equal parts or portions" he devises and bequeaths to his trustees in trust for his daughter Bertha, &c.; one other of said "four equal parts or portions" in trust for his son Louis, &c.; "one other" in trust for his son Simon; and the "remaining one" in trust for his son Julian; and in each case he directs that immediately upon the death of the *cestui que trust,* the trustees are to grant, assign, transfer and convey said "one-fourth part" unto his or her children then living, &c. Here is a clear indication derivable not only from the particular terms employed, but also from the entire scheme of the will, that the testator intended the several portions of his property to be set apart, and each to be managed as a separate trust. It was contended, however, that inasmuch as the estate consisted of a large number of dwellings, stores, ground rents and unimproved property, as well as personal property, it could not have been the intention of the testator that there should be an actual division into four equal parts, because such a division would be impossible without a sale, and no power was conferred upon the executors, and that therefore it was only intended by the testator that each child should get one-fourth of the profits of the estate, which was to be held and administered by the trustees as one trust. It is doubtless true that a power to divide an estate will not authorize a sale of it. 2 *Sugden on Powers (3d Am.ed.), page* 427, *sec.* 48. Nor can a right to sell in this case be inferred as a power necessary to the proper execution of the power to divide which was conferred by the will. There have been cases in which it was held that a power of sale in an executor may arise by implication; but the doctrine has never gone further than that stated in *Bentham vs. Wiltshire,* 4 *Madd.,* 44, and cited approvingly in 3 *Redfield on Wills,* 139: "To enable executors to sell, the power must either be expressly given to them, or necessarily to be implied, from the produce being to pass through their hands in the execution of their office, as in payment of debts and lega-

cies." *Patton vs. Randall,* 1 *Jac. & W.,* 189; *Gosling vs. Carter,* 1 *Coll. C. C.,* 644; *Forbes vs. Peacock,* 11 *Sim.,* 152.

In Maryland it is questionable whether even this doctrine prevails. *Magruder vs. Peter,* 4 *Gill & J.,* 329. Neither can the executors derive any increase of power from that clause which confers upon the trustees a power to sell. This power, by the terms of the instrument, was to be used only "for the purpose of making changes of investment"; and even if this were not so, it is well settled that the fact that the same party is both trustee and executor cannot operate to enlarge his powers in either capacity. *Keplinger vs. Maccubbin,* 58 *Md.,* 203; *Long, et al. vs. Long, et al.,* 62 *Md.,* 67. The testator in this case evidently intended his estate to be divided in kind. We must suppose that he believed it could be divided equally and fairly without the necessity for a sale, and there is nothing in the record that convinces us that in this opinion he was necessarily mistaken. If, however, it should become apparent that some portion of the property will have to be sold to do justice to the several parties entitled, a Court of equity would have full power to order a sale and direct the proceeds to be placed in the hands of the trustees appointed by the testator, to be administered by them in accordance with the terms of the trust. We do not think the case of *Gilpin, et al. vs. Hollingsworth, et al.,* 3 *Md.,* 190, has any pertinency to this case. There the Court held, that expressions in a devise importing division by equal or unequal shares creates a tenancy in common. In the case at bar the testator first directs the division of his property and then devises the parts. The decree must therefore be reversed, and the cause remanded for a new decree in accordance with the views herein expressed.

*Decree reversed,*
*and cause remanded.*

(Decided 21st June, 1894.)