ELLA LEVERING AND SAFE DEPOSIT AND TRUST
. COMPANY OF BALTIMORE, TRUSTEE
ET AL., vs. FRANK GOSNELL AND
HENRY T. OUDE-
SLUYS ET AL.

*Sale and partition of land; contingent remaindermen; jurisdiction of equity; after-born children.   Code, Art. 16, sec. 213.*

The will of a testatrix, among other provisions, left an annuity to each of her four sisters, directing that a portion of her estate sufficient to yield the necessary income be set aside and held for that purpose; the share of any such sister who died to become and pass as part of the testatrix's residuary estate; another clause of the will left an equal fourth share of the residuary estate to each of her two daughters and to her son, in trust for life, with certain powers of sale and appointment by will, with remainders over, etc.   Upon the death of the testatrix a bill was filed praying that sufficient property be set aside to provide the annuity for the three surviving annuitants and for partition in kind of all the balance of the estate among the parties in question.   All persons in being with any interest in the estate were made parties, but the bill contained no prayer for a sale nor any of the jurisdictional allegations of section 213 of Article 16 of the Code of Public General Laws.   An interlocutory decree was passed ordering the partition so to be made and appointing a commission to appraise the property and make such partition of it.   The commission set aside certain ground rents and other real estate for the purpose of paying the annuities and divided all the rest of the property in accordance with the provisions of the will. The Court in ratifying the commission's return directed that the trustee holding the property set aside for the annuities should, as the annuitants died, sell a proportionate part of such property and pay the proceeds over to the trustees and

other devisees so as to equalize the shares.  Certain great grand-
children of the testatrix were born after the final decree, and
thereafter, one of the annuitants having died, the trustee sold
a certain ground rent, one of those set aside for the annui-
tants; the purchaser excepted to the ratification of the sale
on the ground that it was impossible to tell who would be the
residuary heirs of the testatrix and that, under the proceed-
ings, after-born great grandchildren would have an interest in the
ground rent; the Court below sustained the exceptions, and on
appeal it was *held,* that the Court had no jurisdiction to
decree the sale of the ground rent and that the contingent
remaindermen, not parties to the suit, would not be bound by
the decree ordering and confirming the sale.          p. 593

*Decided April 5th, 1911.*

Appeal from Circuit Court No. 2 of Baltimore City.

The cause was argued before BOYD, C. J., PEARCE,
PATTISON and URNER, JJ.

*Frank Gosnell* and *Frank Gosnell, Jr.,* (with whom was
*W. L. Marbury* on the brief), for the appellant.

*Thos. B. Marshall,* for the appellees.

PEARCE, J., delivered the opinion of the Court.

This is an appeal by the Safe Deposit and Trust Company
of Baltimore, trustee, and others, from an order of Circuit
Court No. 2 of Baltimore City, sustaining the exceptions of
Henry T. Oudesluys to the ratification of the sale of a
ground rent made to him by the Safe Deposit and Trust
Coompany of Baltimore, trustee, which will be designated
herein as The Trust Company.  The Trust Company was
appointed such trustee by a decree of Circuit Court No. 2
of Baltimore City dated November 30th, 1894, and passed
in a cause wherein Adam Denmead was plaintiff, and Frank
Gosnell and others were defendants, the proceeding being

instituted for a partition of the estate of Mrs. Mary E. Denmead of Baltimore, then lately deceased, and sole question involved is whether or not the Circuit Court had the power and jurisdiction to incorporate in the said decree for partition of said estate, the provision which was incorporated therein authorizing and directing the said Trust Company upon certan contingencies named to sell from time to time one or more lots constituting part of said estate, for the purpose of equalizing the partitions made by said decree.

It will be necessary to state the facts at some length in order to understand the situation at this time. Mrs. Denmead died January 26th, 1894, leaving a will by which she disposed of a large amount of property both real and personal.

By the first clause of her will she gave to each of her four sisters four hundred dollars per annum during their respective lives, and directed that such portion of her estate as should be necessary to yield a clear income of sixteen hundred dollars per annum to be set aside and held in trust for that purpose, and that upon the death of each one of said sisters, one-fourth part of said property so set aside should become and pass as a part of the rest and residue of her estate.

The second and third clauses relate only to bequests of money and chattels which need not be considered.

By the fourth clause she devised and bequeathed all the rest and residue of her property real, personal and mixed (with the exception of a certain lot and the stable thereon) as follows:

"One equal fourth part thereof in trust for the use and benefit of each of my daughters, Ella Levering, wife of Robert Levering, and Mary Denmead Gosnell, wife of Frank Gosnell, and one equal fourth part thereof in trust for the use and benefit of my son Adam Denmead, for and during the full term of their natural lives, respectively. And I empower my said children respectively, with the consent and approbation evidenced in writing, of the respective trustees who may be appointed to execute these trusts, or their successors, to sell and

dispose of the corpus of my property in which they respectively have a life estate hereunder, or any part thereof, and convey the same and give a good and perfect title thereto by their respective deed or deeds duly executed, said trustees respectively uniting therein, to the purchaser or purchasers thereof, and the proceeds of such sale or sales to invest in other property or estate, as my said children, respectively, with the consent and approbation aforesaid, may deem expedient and proper, and with full power to my said children, respectively, likewise with the consent and approbation aforesaid, to change such reinvestment and new investment from time to time again to make as they respectively may think fit and direct.

"And from and immediately after the death of my said children, respectively, then as to the corpus of my property in which they respectively have a life estate hereunder (in whatever form it may be at that period), in trust for such person or persons, uses, objects, trusts and purposes, as they shall by their respective last will and testament direct, limit and appoint; and for want of such directions, limitations and appointments, then in trust for the use and behoof of such person or persons as would by the now existing laws of the State of Maryland be his, her or their heir or heirs respectively, free from all trusts hereunder.

"The remaining one-fourth part of said rest and residue, including the said lot and stable on Morton street or alley, I give, devise and bequeath in trust as follows:

"One equal half part thereof to each of my grandchildren, Talbott Denmead and Helen Denmead, children of my deceased son Talbott, for and during their natural lives respectively, and from and immediately after the death of my said grandchildren, then to their children respectively living at the time of their death. Should, however, either the said Talbott or the said Helen die without issue living at the time of his or her death, then with remainder to the survivor of them, but subject to the same trust, and with like limitations as are herein declared respecting the portion originally passing to said survivor hereunder.

"And in the event of both of my said grandchildren dying without issue living at the time of their death, then I will and

direct that the whole of my estate in this clause mentioned shall pass to my said daughters Ella and Mary and my son Adam, under the fourth clause of this my will."

Mrs. Morrow, one of the four sisters named as an annuitant in the first clause of the will, died during Mrs. Denmead's life.

Upon Mrs. Denmead's death the proceeding already mentioned was instituted to procure a partition of the rest and residue of her estate among the parties entitled according to their respective interests therein, the bill averring "that after setting aside the said lot and stable thereon to be held, subject to the provisions of the fifth clause of the will, and after setting aside such portion of the estate of the testatrix as may be necessary to carry out the trusts declared in the first clause of the will, your orator charges and avers that the rest and residue of the property and estate of said testatrix is susceptible of partition amongst the parties entitled.

All persons in being having any interest in the estate were made parties to this proceeding, but it appears from the record that since the date of the decree for partition, November 30th, 1894, there have been born two grandchildren of Ella Levering, one of the life tenants under the will, viz: Mary Denmead Ruffin and Henrietta Harrison Ruffin, who might have a contingent interest in that portion of the estate in which Ella Levering has a life estate.

The interlocutory decree for partition directed that there be a partition "of all the property, real and personal, whereof Mary E. Denmead died, seized and possessed, and which is particularly described in these proceedings."

The final decree for partition ratified and confirmed the commissioners return and by that decree The Safe Deposit and Trust Company of Baltimore was appointed as trustee to hold in severalty all the real estate described in the commissioners' return as *Division A,* so that the three named surviving sisters of Mrs. Denmead should each receive said respective annuities of four hundred dollars during their

respective lives as provided by said will; and said decree further provided "that upon the death of each one of said annuities the said Safe Deposit and Trust Company of Baltimore, trustee as aforesaid, shall without compensation, partition and divide among those entitled thereto in remainder as aforesaid, such equal part or portion of the property or estate then constituting said *Division A* as may be held to provide for the payment of the annuity of the person so dying, and *for the purpose of equalizing said divisions or partitions,* the said Safe Deposit and Trust Company of Baltimore City, trustee, is hereby further authorized, empowered and directed from time to time, but without compensation, to make public or private sales for cash of such one or more of said lots or parcels of ground, as may be necessary to that end, and to execute, acknowledge and deliver all necessary deeds and conveyances as may be required to carry out the foregoing provisions of this decree."

The final decree further appointed trustees to hold the property described in the other divisions in trust as prescribed in said will as follows:

The Safe Deposit and Trust Company of Baltimore to hold *Division B* in severalty in trust for Ella Levering for her life with remainders over:

Adam Denmead to hold in severalty *Division C* in trust for Adam Denmead for his life with remainders over:

Frank Gosnell to hold in severalty *Division D* in trust for Mary Denmead Gosnell for her life with remainders over:

Carrie Denmead to hold in severalty *Division E* in trust for Talbott Denmead for his life with remainders over:

Carrie Denmead to hold in severalty *Division F* for Helen B. Denmead for her life with remainders over.

Division A consists of 23 ground rents in the City of Baltimore.

Mrs. Taylor, one of the three sisters of Mrs. Denmead, the annuitants under her will, died August 10th, 1910, and thereupon the Safe Deposit and Trust Company of Balti-

more, in pursuance of the direction of said decree for petition, and for the purpose of partitioning and dividing among those entitled thereto in remainder, the equal part of the property or estate their constituting *Division A,* held to provide the annuity of Mrs. Taylor, made a private sale of one of said twenty-three ground rents of sixty-three dollars per annum to Henry T. Oudesluys for the sum of $1,400.00, and reported said sale for ratification to the Circuit Court No. 2 of Baltimore City.

The purchaser excepted to the ratification of this sale, alleging that the trustee could not give him a good and marketable title to said ground rent; (1) Because "it is impossible at the present time to ascertain who are or may be the heirs and children of said life tenants, who at the time of their respective deaths would be entitled to the estate in remainder, and because the only method by which the interests of such unknown, and perhaps unborn, persons may be sold is by proceedings under section 213 of Act 16 of the Code of Maryland, this proceeding not having been brought thereunder, but brought only for the purpose of making a partition in kind of a part of the property passing under said will".

(2) "Because said ground rent by virtue of said will and the death of Mrs. Taylor, became a part of Mrs. Denmead's undivided residuary estate and the estate and property of the persons to whom it was limited by the fourth and fifth items of said will."

(3) "Because of the birth subsequent to the date of the decree for partition of the grandchildern hereinbefore mentioned of Mrs. Denmead".

These three exceptions may be treated as one and the same, viz: that said great grandchildren, and any other future born persons who might have a contingent interest in said ground rent are not bound by the decree for partition and could only be bound by proceedings under section 213 of Article 16 of the Code.

It is not denied that the power of sale which the trustee is here claiming to exercise is derived exclusively from that clause of the decree for partition which has been transcribed herein, so that the only question is whether the Court had jurisdiction to decree a sale of this ground rent so as to bind the contingent remaindermen not parties to the cause.

This question seems to us to have been settled beyond controversy by the decision in *Ball* v. *Safe Deposit Company,* 92 Md. 503.

In that case the testator, Dr. John K. McCulloh in the 12th item of his will devised and bequeathed all the residue of his estate, not therein otherwise disposed of, to the Safe Deposit and Trust Company of Baltimore "in trust for the use of all my children for and during their respective lives, and upon the death of any one of my children, leaving a wife, or issue living at the death of such one of my children, the trust as to the share of such child shall cease, and its share shall be divided as follows: If there be a wife and no issue then living, the whole of the share shall go to the said wife; and if there be issue then living and no wife, the whole shall go to such issue per stirpes, and if there be a wife and also issue, the wife shall have the same part as one of the children of such one of my children so dying, and the rest of the share shall be divided among said issue per stirpes".

In event of the death of all the testator's children without leaving any wife or issue surviving any one of them, the whole rest and residue of the estate was devised and bequeathed to numerous legatees.

The testator died leaving surviving him but one child, William W. McCulloh, still an unmarried man at the time of the passage of the decree in that case.

The bill was filed by said William W. McCulloh and the Safe Deposit and Trust Company of Baltimore against all the legatees in remainder in event of the death of William W. McCulloh, without leaving a wife or issue surviving, and

the prayer of the bill was that the Court would assume jurisdiction of the trusts under the will and approve and ratify investments and change of investments made; that the trustees might be authorized to sell a certain ground rent of $280, constituting part of the corpus of the trust estate, and that it be authorized from time to time, upon the orders of the Court to sell any of the investments it then held and to reinvest the proceeds upon the same trusts, the bill averring that it would be for the benefit and advantage of the trust estate that power and authority should be given to make such sales.

Testimony was taken tending to show that it was to the benefit and advantage of the trust estate to sell the particular ground rent mentioned, and the witnesses testified that they thought it desirable that the trustee should be authorized to make future sales as necessity or emergency should arise, and a decree was passed July 25, 1900, authorizing the sale of the particular ground rent mentioned, and authorizing future sales from time to time, upon orders of the Court, whenever it should appear to the Court that such sale would be advantageous. The sale of the particular ground rent mentioned was consummated, and subsequently the trustees reported an offer by the appellant for another ground rent, the sale of which the trustee believed to be to the advantage of the persons interested, and which two real estate brokers of Baltimore City certified they believed to be advantageous to the owner of the rent. The Court authorized this sale subject to the usual order *nisi,* and the reported purchaser excepted, assigning the same objections which are urged to the ratification of the sale now before us. These exceptions were overruled by a *pro forma* order or decree, and the sale was finally ratified and confirmed, but on appeal to this Court that order was reversed and the sale was set aside.

In that case, this Court, speaking through JUDGE BRISCOE for the whole Bench, said: "We come then to the question whether the jurisdiction to decree the sale of the property

now in controversy was conferred upon the Court by virtue of the Act of 1868, Ch. 273, now Code, Art. 16, section 213; This statute declares that in all cases where one or more persons is or are entitled to an estate for life or years * * * or are entitled to a remainder or remainders, vested or contingent, * * * or any other interest vested or contingent in the same land, *on application of any of the parties* in interest, *a Court of Equity may,* if all the parties in being are parties to the proceeding, decree a sale or lease thereof, if it shall appear to be advantageous to the parties concerned, and shall direct the investment of the proceeds of · sale; * * * and all such decrees, if all the persons are parties who would be entitled if the contingency had happened at the date of the decree, shall bind all persons, whether in being or not, who claim or may claim any interest in said land under any of the parties to said decree or under any person from whom any of the parties to said decree claims.

The jurisdiction of a Court of equity to decree a sale of land under this Act rests upon the concurrence of two conditions precedent, and they are, that all parties in interest and in being, who would be entitled, if the contingency had happened at the date of the decree must be parties to the proceeding, and the sale must be made to appear to be advantageous to the parties concerned. If these conditions as contemplated by the Act, are not complied with *at the date of the decree,* the Court will be without jurisdiction to decree a sale. The language of the Act is "and all such decrees, if all the persons are parties who would be entitled if the contingency had happened *at the date of the decree,* shall bind all persons, whether in being or not, who claim any interest in said land under any of the parties to the decree" * * * We are therefore, clearly of opinion for the reasons stated * * * that Circuit Court No. 2 of Baltimore City had no power by virtue of its general chancery jurisdiction, nor under the Act of 1868, Chapter 273, Code, Art. 16, sec. 213, to authorize the sale of the ground rent under the decree passed in this cause, and the Court below was therefore

without jurisdiction to ratify and confirm the sale reported herein."

That decision is in full accord with the principles established in the cases of *Dowin* v. *Sprecher,* 35 Md. 474; *Long* v. *Long,* 62 Md. 33, and *Stein* v. *Stein,* 79 Md. 464. The latter case, it was contended by the appellant here, supported its contention, because the Court there said "if it should become apparent that some portion of the property will have to be sold to do justice to the several parties entitled, a Court of equity would have full power to order a sale and direct the proceeds to be placed in the hands of the trustees appointed by the testator, to be administered by them in accordance with the directions of the terms of the trust." But we think it is apparent that this implies that the jurisdiction must be *properly invoked,* that is by the only method of procedure provided in such case, and not under its general chancery powers.

The decision in *Ball* v. *Safe Deposit Co., supra,* has been approved in *Murphy* v. *Coale,* 107 Md. 198, where this Court said: "The testator's daughters are given life estates with remainders to their children, and in the event of a daughter dying without leaving children or descendants living at her death, her share is given to her brothers and sisters and their descendants. As the will does not give to the executors the power to dispose of the ground rents in which the shares of the daughters were invested by the directions of the will, and as these unborn contingent remaindermen would not be bound by the decree of 1892, which determined that the power to dispose of the investment of the daughter's shares was vested in the executrix, their interest in the ground rents in question would not pass by a sale made by the executrix. *Long* v. *Long,* 62 Md. 33; *Ball* v. *Safe Deposit Co.,* 92 Md. 503. * * * In order to sell the estates of the remaindermen, resort must be had to proper proceedings under section 213, Article 16 of the Code."

In *Ball* v. *Safe Deposit Co., supra,* a motion for re-argument was made, accompanied by an elaborate and able brief

in support of the motion, which, after full consideration, was overruled; so that the question involved must be regarded as definitely settled.

It is to be regretted that the decision which we feel compelled to make should necessitate the cost and expense of three separate and distinct partition proceedings for the purpose of dividing this portion of Mrs. Denmead's estate, but when the jurisdiction of the Court to make such partition in this proceeding is successfully challenged, there is no escape from the consequences.

For the reasons stated the order sustaining the exceptions to the sale and setting the same aside will be affirmed.

> *Order affirmed, costs to be paid by the Safe Deposit and Trust Company out of that portion of the trust fund representing the annuity of the deceased annuitant.*