# J. WESLEY BEGGS and CLARA S. BEGGS, His Wife,

## *vs.*

## FRANKLIN H. ERB et al.

*Rule in Shelley's Case—Judicial Sale—Act of 1862—Unborn Infants—Defects in Bill—Collateral Attack.*

Where, while trustees were given active duties as regards the life interest, they had, as regards remainders to the life tenant's heirs, no discretionary or substantial duty to perform, the heirs took legal estates and the life tenant an equitable estate, and the Rule in Shelley's Case did not apply.                    p. 350

A sale under Act 1862, ch. 156, is binding on infants unborn at the date of the decree for sale, even though the bill failed to aver that a sale would be to the advantage of the parties concerned, provided only there was proof of such jurisdictional fact.                    pp. 351-354

The whole theory of the Act of 1862, ch. 156, is that the parties *in esse* represent those who are unborn.                    p. 352

If either averment or proof is lacking, advantage of the defect may be taken by objection seasonably interposed in the proceeding; but, if either is present, the absence of the other cannot be availed of in a collateral proceeding.                    p. 354

Every intendment should be made to support titles acquired under judicial sales, especially where it is not made to appear, by those seeking to annul them, that they have suffered injury by reason of the defects complained of.                    p. 354

*Decided April 8th, 1921.*

Appeal from the Circuit Court for Carroll County, In Equity (THOMAS, J.).

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Francis Neal Parke,* with whom were *Ivan L. Hoff* and *James A. C. Bond* on the brief, for the appellants.

*Osborne I. Yellott* and *Theodore F. Brown,* for the appellees.

ADKINS, J., delivered the opinion of the court.

Magdalena Rinehart died about the year 1840, leaving a will, one item of which is as follows:

> "I give and devise unto my grandsons, John Rine-
> hart & Peter Masonhimer, and to the survivor of them
> and the heirs of such survivor my farm called and
> known by the name of Stevenson's Place. Also four
> cows, upon the following trusts, to wit, in trust that
> they the said John Rinehart & Peter Masonhimer &
> the survivor of them & the heirs of such survivor, do
> and shall allow my granddaughters, Sarah Sentz &
> Catherine Ellen Sentz, to have the use of said cows,
> also to pay over to my said granddaughters the rents
> and profits of said farm during their joint natural
> lives, after the death of either of said grandchildren
> the portion of the one so dying to go to her representa-
> tives in fee simple equally share and share alike, and
> said trustees are to pay over and transfer accord-
> ingly."

In a partition proceeding begun in 1851, a decree was passed in September, 1853, whereby it was adjudged that Absalom Foreman and Sarah Foreman (formerly Sarah Sentz), his wife, should hold in severalty and not jointly or in common with said Catherine Ellen Sentz, part of said "Stevenson's Place," containing 113 acres, 2 roods and 20 square perches of land, more or less, and that the said Catherine Ellen Sentz should hold in severalty and not jointly or in common with the said Absalom Foreman and Sarah Foreman, his wife, part of said "Stevenson's Place," containing 145 acres, 1 rood of land, more or less. From the date of said decree, although the legal estate was in John Rinehart,

trustee, the other trustee having declined to serve, the said
Catherine Ellen Sentz took and assumed full and actual pos-
session of said last-named parcel of land, and held and en-
joyed possession thereof until the same was sold to one John
T. Erb on January 26th, 1867, under a decree of the Circuit
Court for Carroll County, passed in cause No. 761 Equity,
in said court instituted in February, 1864, by Franklin H.
Erb, Estella K. Erb and George C. Erb, infants, by Christian
Erb, as next friend, against the said infants, John Rinehart,
trustee, Samuel Erb and Catherine Ellen Erb, his wife, the
said Catherine Ellen Sentz having previously married the said
Samuel Erb, and the said infants being their only children
at the date of filing the bill and at the date of the decree. The
bill filed in that case, after reciting the facts above mentioned,
alleges,

> "that it would be greatly for the benefit and advan-
> tage of such infants that the said real estate so allotted
> and partitioned as aforesaid to the said Catherine El-
> len Sentz, now the wife of Samuel Erb and the mother
> of said infants, should be sold and the money arising
> from the sale thereof secured or invested in some
> safe and reliable security, under the order and direc-
> tion of your Honor, and upon such terms and condi-
> tions as your Honor may prescribe for the benefit of
> the said Catherine Ellen Erb during her life, and aft-
> erwards for the benefit and use of the said infants and
> others the heirs of the said Catherine Ellen, according
> to the terms of said will."

The prayer of the bill is

> "that the said real estate and premises so allotted and
> partitioned to the said Catherine Ellen, as aforesaid,
> may be sold, and the money arising from the sale there-
> of may be secured or invested under the order and
> direction of your Honor for the benefit of the said
> Catherine Ellen during her life, and afterwards for
> the benefit of the heirs of the said Catherine Ellen,
> and that your orator as next friend as aforesaid may

have such further and other relief in the premises as his case may require or equity allow."

John Rinehart, the trustee, filed an answer, admitting the allegations of the bill, renouncing his trusteeship and consenting to the passage of the decree as prayed.

Catherine Ellen and Samuel W. Erb, her husband, filed their joint and several answer, admitting the matters and things charged in the complainants' bill of complaint and consenting that a decree be passed for a sale of the land mentioned in the bill

> "provided that the proceeds of the sale thereof are invested in some productive stock or otherwise, and the annual interest thereon applied to the separate use of your defendant, Catherine Ellen Erb, and to be paid to her."

It appears by the return of the commission to take testimony that two credible witnesses testified as follows:

> "5th Interrogatory—Would it or not be to the interest and advantage of all the parties interested in the land mentioned in this cause to sell the same and invest the proceeds from the sale thereof in some productive stock or otherwise for the use of the said Catherine Ellen Erb during her life, and for the benefit of her children after her death? If yea, state your reasons for entertaining such opinion.

> "Answer to the 5th Interrogatory—That it would be to the interest and advantage of all the parties mentioned in this cause to sell said land and invest the money arising from said sale in some productive stock, or otherwise, for the use of the said Catherine Ellen Erb during her lifetime, and for the benefit of her children after her death, because the said land is badly managed and depreciates in value. It would cost a great deal of money to put it in repair, and the interest on the purchase money would be worth more than the products of the farm."

And thereupon the court passed the aforesaid decree for the sale of said land for the purposes aforesaid on April 8th, 1864, and named the said Samuel W. Erb, husband of said Catherine Ellen Erb, as the trustee to make said sale. It appears that the trustee duly qualified and sold and conveyed said property to the said John T. Erb, and received the purchase money therefor, and that the defendant in the present case, J. Wesley Beggs, holds and claims title thereto under the said John T. Erb through several *mesne* conveyances, except as to two or three small parcels sold to others, the farm now in controversy containing about 135 acres.

The bill in the case before us was filed by the children of Catherine Ellen Erb and Samuel W. Erb, born after the date of the decree in No. 761, and those claiming under them, against the defendants, praying that the property be sold as incapable of division without loss and injury to the parties interested, the theory of the bill being that the sale under the decree in No. 761 carried only the interests of those actually made parties to that suit and did not affect the interests of after born children, because the bill in that case did not contain the allegation that it would be advantageous to the parties concerned to sell said property, that being, according to plaintiffs' theory, a jurisdictional allegation, the absence of which cannot be remedied by even the fullest proof of the jurisdictional fact. Proceeding on that theory, plaintiffs set out in their bill the supposed interests of all parties to the bill, plaintiffs and defendants, from which computation the interest of the plaintiffs is made out to be seven-tenths and that of the defendant, J. Wesley Beggs, three-tenths.

There was no dispute about the facts in the case, but the defendant strenuously controverted the legal conclusion deduced by the plaintiffs from the admitted facts. Their position was, and is, that plaintiffs had no interest in the property for either of two reasons:

1.  Sarah Sentz and Catherine Ellen Sentz took under the will of Magdelena Rinehart a fee simple estate under the Rule

in *Shelley's Case,* which was then in force in Maryland, be
cause the devise to the sisters for life, with remainders to
their representatives, were both of equitable estates, and the
word "representatives" here means "heirs" and the estates
consequently coalesce in the first takers.

2. Or if the above contention be not accepted, the pro-
ceedings in No. 761 equity were a substantial compliance
with the Act of 1862, Chapter 156, now codified as amended
in *Bagby's Code* as Section 228 of Article 16, and the sale
under the decree in said proceedings carried the interest of
all parties in interest including those not then *in esse.*

The learned judge who sat in the case held that the first
position was not well taken, because the estate in remainder
was a legal estate, the trustee having no discretionary or sub-
stantial duty to perform in relation thereto. He also felt
constrained, by reason of the decisions of this Court in sev-
eral cases cited by him, to reject the second contention of
defendants, and signed a decree appointing trustees to sell the
property as prayed in the bill. The case is now before us on
appeal from the decree.

In passing on the first contention of the defendants JUDGE
THOMAS said: "It is insisted by counsel that both Catherine
Ellen Sentz and her 'representatives' took equitable estates,
and that, therefore, the rule applies. In this view, however,
I cannot concur. Whether the term 'representatives' be con-
strued to mean her children or her heirs, as the trustees had
no active duty to perform or no discretion in reference to the
remainders provided for in the will, under the decisions in
this State her 'representatives' took legal estates"; citing *Tay-
lor* v. *Watson,* 35 Md. 519; *Long* v. *Long,* 62 Md. 33; *Hooper*
v. *Felgner,* 80 Md. 271; *Griffith* v. *Plummer,* 32 Md. 74.

It was conceded, of course, that the rule did not apply
unless both took equitable estates. We entirely concur in what
was said by the learned trial judge on this point and his con-
clusion relative thereto.

The second contention of the defendants raises the more
difficult question. The court below felt that it was concluded

by what was said on this point in *Slingluff* v. *Stanley*, 66 Md. 225, and in *Scarlett* v. *Robinson*, 112 Md. 207, viz: "It is the allegations of the bill that confer jurisdiction and determine the power of the court to decree the sale," and referred also to *Devecmon* v. *Shaw*, 70 Md. 219; *Ball* v. *Safe Deposit Co.*, 92 Md. 503, and *Levering* v. *Gosnell*, 115 Md. 582. Similar expressions are found in *Comegys* v. *State*, 10 G. & J. 183; *Tomlinson* v. *McKaig*, 5 Gill, 256; *Bolgiano* v. *Cooke*, 19 Md. 393; *Gregory* v. *Lenning*, 54 Md. 56. In some of these cases it is also said that "the true test of jurisdiction is whether a demurrer will lie to a bill." And in *Comegys* v. *State, supra*, it is said: "It is not the proof which gives jurisdiction but the subject matter of the bill, and the nature and character of the claim."

But it will be found, on a careful examination of the cases referred to, that in most of them the objection was to a failure or defect in proof, and that what this Court really decided was that if the jurisdictional facts are properly averred in the bill, a sale cannot be successfully attacked collaterally by reason of insufficient proof or even an entire failure of proof. The only case in which it was said that a sale could not be sustained solely because of the absence of such averments is *Tomlinson* v. *McKay, supra*, where on appeal this Court recognized that principle as correct, but reversed the decree, holding that the averments were sufficient under another statute than that under consideration by the lower court. We have found no case in this State where a *bona fide* purchaser at a judicial sale lost his property in a collateral proceeding because of the absence of proper allegations in the bill, where the jurisdictional facts were satisfactorily proven.

We do not think the bill in the present case would have stood the test of a demurrer. If a demurrer had been interposed and the case were now before us on an appeal from an order of the lower court overruling such demurrer we would be dealing with a different question.

But it does not necessarily follow, because a demurrer is the test of jurisdiction where the decree rests wholly upon the allegations of a bill and is without sufficient evidence to support it, or where the question is raised before decree, that such a test should be applied in a collateral proceeding where there was sufficient proof of the jurisdictional fact to support the decree, and no objection taken in the original proceedings to the defect in the bill.

By Section 26 of Article 5 of Code of 1860 it is provided that "on an appeal from a court of equity no objection * * * to the sufficiency of the averments of the bill or petition * * * shall be made in the Court of Appeals, unless it appear by the record that such objection has been made by exceptions, filed in the court of equity." And by Section 27 of said article it is provided that "no defendant to a suit in equity in which an appeal may be taken shall make any objection to the jurisdiction of the court below, unless it shall appear by the record that such objection was made in said court." Under such circumstances it is the duty of the court to consider the evidence and to make such decree as is required without regard to the averments of the bill. *Schroeder, Admr.,* v. *Loeber,* 75 Md. at 203. See also *Jones* v. *Hardesty,* 10 G. & J., at 419; *Oliver* v. *Palmer,* 11 G. & J., at 442; *Gerting* v. *Wells,* 103 Md., at 637; *Shugars* v. *Shugars,* 105 Md., at 344; *Reed v. Reed,* 109 Md., at 695; *Equitable Ice Co.* v. *Moore,* 127 Md., at 326; *Benson* v. *Yellott,* 76 Md. 159; *Sam'l Ready School* v. *Safe Deposit & Trust Co.,* 121 Md. 515.

The above sections of the Code are quoted to show that omissions of the character now under consideration do not necessarily nullify the proceedings.

We are not unmindful of the fact that these provisions apply to parties to the suit, but this raises the question of representation. The whole theory of the Act of 1862, Ch. 156 (Sec. 228 of Art. 16, Bagby's Code) is that the parties *in esse* represent those who are unborn.

In Miller's Equity Procedure it is said (Section 29, note 1): "The doctrine of representation is sometimes considered as an exception to the general rule; as in *Foster,* Fed. Pr., Sec. 45; but it is scarcely an exception, since the absent person is in fact in court through his representative, by whom his interest is protected or his claim enforced; *Calvert on Parties,* 20."

The lower court held the sale to be valid as to the infants who were *in esse* at the date of the decree in No. 761 and as to the life tenant; because as to infants the Court had jurisdiction under Sections 36 and 37 of Art. 16 of the Code of 1860, and the life tenant consented to the sale. Indeed, it was contended in argument that only these interests were contemplated by the proceedings in No. 761. With this contention we cannot agree. It is distinctly stated in the bill that it would be for the advantage of "such infants" that said real estate be sold and the money arising from the sale thereof be invested "for the benefit of the said Catherine Ellen Erb during her life and afterwards for the benefit and use of the said infants and others the heirs of the said Catherine Ellen according to the terms of said will." And the prayer of the bill is that the said property be sold and the money arising therefrom be invested "for the benefit of the said Catherine Ellen during her life, and afterwards for the benefit of the heirs of the said Catherine Ellen"; so it seems to us apparent that the proceeding contemplated a sale of all interests in the property under the Act of 1862, Chapter 156.

On the theory of appellees, if the sale could not be held valid under Sections 36 and 37 of Code of 1860 as against the infants who were *in esse* and actual parties to the suit, but depended upon the Act of 1862, Chapter 156, it would be void even as to them. Would it have been so held had a bill of review been filed by such infants on becoming of age? We think not. And yet it is not perceived why an infant party to the suit should be any more bound than should those

unborn who were parties by representation. There is nothing in this record either alleged or proved to show that any of them were injured.

It would be an anomaly to hold that the interests of an unborn person could be better safeguarded by averment than by proof. If in the public interest and for the protection of innocent purchasers courts should hold that jurisdiction is given where jurisdictional facts are properly averred in a bill, even if those facts be not proved, still stronger reason is there for holding that jurisdiction attaches when such facts are proved even if they be not averred. We do not understand such expressions, found in some of the cases, as that quoted from *Comegys* v. *State, supra,* to mean anything more than that it was *not necessary* to prove facts in order to confer jurisdiction if they are properly averred in the bill. But jurisdictional facts *should be* both averred and proved, as said by JUDGE ALVEY in *Devecmon* v. *Shaw, supra.*

If either averment or proof is lacking, advantage may be taken of the defect by objection seasonably interposed in the proceeding, and by appeal. But if either is present, the absence of the other cannot be taken advantage of in a collateral proceeding.

Every intendment should be made to support titles acquired under judicial sales, especially where it is not made to appear, by those seeking to annul them, that they have suffered injury by reason of the defects complained of. See *Davis* v. *Helbig,* 27 Md., at 466; *Newbold* v. *Schlens & Wilkins, Trustees,* 66 Md., at 593.

It has not been suggested that there was any inadequacy of proof in this case and it appears from the record to have been sufficient.

*Decree reversed and bill dismissed, with costs to appellants.*