## Gaither et al. v. Fraser et al.

Jan. 23, 1942.

W. Earl Dean for appellants.

F. Douglas Curry and Edw. C. Wurtele for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This is a litigation in equity originating in the Mercer circuit court for the purpose of dividing a parcel of real estate jointly owned, in different proportions, by the parties to the litigation, the title to which they obtained under the wills of E. H. Gaither, who died a resident of Mercer county on January 15, 1924, and that of his surviving widow, Fanny Gaither, who died on March 4, 1935, each of the wills being probated in the Mercer county court following the deaths of the testator and testatrix. The property so jointly owned is situated in the midst of the business section of the city of Harrodsburg, fronting on Lexington Street the entire distance between Main Street on the east and Chile Street on the west. All of the owners are adults, except the defendant, J. A. Fraser, Jr., who is an infant under fourteen years of age—but having a statutory appointed and qualified guardian—and who owns in remainder, after the termination of a designated life estate, a one-eighth undivided joint interest in the property, the life tenant being Mrs. Emily G. Wurtele, a daughter of the makers of the respective wills. She also owns in the property a one-eighth undivided interest absolutely.

Upon the property are some business houses and some vacant lots, one of the latter bordering on Chile Street and runs back 115 feet from Lexington Street, and it has a frontage of 48 feet on the latter street. One of the buildings on the lot fronts the same street 34 feet; whilst the vacant lots at the time of the filing of the action and the rendition of the judgment were rented to operators of garages for the storage of automobiles. The lease of the garage building located on the property expired the first of this year, 1942, and because of his failure of health the lessee suspended business and did not renew his lease. The owners entered into a tentative agreement to rent the garage building to the Atlantic and Pacific Tea Company at a profitable rental and for a more or less long period of time, but conditioned upon certain alterations to be made to the building which will cost something like $7,000, and it will be necessary to borrow that sum and secure it with a mortgage on the entire property, which appears to be the only way by which the necessary funds to make such repairs and alterations may be obtained so as to make all joint owners equally liable therefor in proportion to their respective shares. But neither the infant nor his statutory guardian, or anyone else for him, can legally execute a mort-

gage of his undivided interest in the property, and if the improvement should be made and the expense thereof incurred with the title to the property remaining jointly—as created by the two wills supra—then the joint owners other than the infant referred to will have to bear the entire burden of the expense of the improvement in order to procure the desired prospective tenant. In that situation this action was filed by the adult owners against the infant and its statutory guardian, and in the petition they set forth the facts as we have related them and averred that the value of the vacant lot bordering on Chile Street and fronting 48 feet on Lexington Street, which is now rented for $35 per month, is equal to a one-eighth of the value of the entire property in its present condition, and they prayed for a division of the property in kind by allotting that vacant lot to the infant and the owner of the particular estate therein for life, to which the life tenant, being an adult, consented. A guardian ad litem was appointed for the infant and he filed answer contesting the right of the court to grant the prayer of the petition. Proof was taken by depositions as well as orally before the court, which latter was transcribed by the stenographer and made a part of the record. Afterwards the cause was submitted and judgment was rendered sustaining the prayer of the petition and alloting the vacant lot to the infant joint owner with a life estate in favor of the life tenant. It was also adjudged that the division or allotment as so made divested all of the joint owners in the entire property of any interest in the lot adjudged to the infant, but the joint interest in the rest of the property of the life tenant of the lot set apart to the infant was not disturbed. It was likewise adjudged that the infant should be and was divested of any interest in the remaining portion of the property after deducting the portion allotted to him. From that judgment the infant by its guardian ad litem prosecutes this appeal.

The action appears to have been brought under the provisions of Section 499 of our Civil Code of Practice, and we find nothing therein, nor have we found any opinion of this court construing any of its provisions denying the right of the court having jurisdiction of such a proceeding to divide or allot in kind to any of the joint owners his proportionate part of the property without disturbing the joint ownership of other owners who do not insist on a division in kind of the property as among themselves. On the contrary, we have upheld what might

be termed partial divisions, as contradistinguished from entire and complete divisions, in a number of cases, among which are, Howard v. Long, 238 Ky. 822, 38 S. W. (2d) 951; Owings v. Talbott, 262 Ky. 550, 90 S. W. (2d) 723, and Turley v. Turley, 193 Ky. 151, 235 S. W. 18. Many others are referred to in the opinions rendered in the cited ones, in which we held that a court of equity in exercising the conferred jurisdiction in such cases for purposes of division may allot in kind to one joint owner his proportionate share in valuation and order the remainder of the property sold, and the proceeds divided between the remaining joint owners if the facts are such as to require such action on the part of the court in securing and protecting the interest of all parties. Furthermore, such opinions hold that the court in some states of fact may direct the commissioner making the division to lay off to one of the joint owners his portion so as to make it adjacent and to connect with other adjoining land owned by him. All and each of such directions may be made, as the cases clearly point out, whensoever it can be done so as to accommodate one or more of the joint owners and at the same time not to injure or imperil in any way the interests of all the others. The cases referred to also hold that under circumstances therein approved only a partial division might be adjudged in which one or more tenants may be given their full share in the entire property according to their interests by slicing it from the entire property and the remaining portion continue to be held by all of the other joint tenants in proportion to their title therein without any division being made in the remainder of the property left after deducting the absolute portion allotted to the others.

The proof in this case abundantly shows without contradiction that the value of the vacant lot allotted to the infant joint owner is as much as if not slightly more than one-eighth of the value of the entire property, and that result appears when calculated upon the amount of rental received for all of the property, and also according to the opinions of competent witnesses as to the value of the entire property and that of the vacant lot separately therefrom; and, lastly, it is shown that the frontage of the vacant lot on Lexington Street is considerably more than one-eighth of the frontage of the entire property on the same street.

But the guardian ad litem argues that under present conditions of which we may take judicial notice, the present purposes to which the instant vacant lot is devoted might soon disappear, inasmuch as the manufacture and use of automobiles will be greatly curtailed if not entirely abandoned as a result of the present war, and that when done it will be non-productive of income, and for which reason it is argued that the judgment should be reversed. But that argument is based upon more or less speculation, and if it should turn out to be true with reference to its present use for parking of automobiles, then the vehicles that may be employed as a substitute for automobiles might themselves be parked on such vacant lots, or, perchance, it might be rented for other purposes, which are not necessary here to be enumerated. But, howsoever that may be, the infant has title to the lot only in remainder after the expiration of a particular life estate in an individual who is now healthy and only 44 years of age. In all probability it will be many years before the infant becomes entitled to receive any income from the involved property. By that time it no doubt will have increased in value and within nine years from now the infant will arrive at 21 years of age, and can then sell his property if it chooses to do so, or if it should come to pass before then that the infant needed the proceeds of the property for his maintenance and education there are ample provisions under and by which its sale may be made for that purpose.

We, therefore, conclude that under the law as declared in the opinion, supra, as applied to the facts of this case, the court was fully authorized to render the judgment appealed from, and it is affirmed.