(Decided 20th March, 1872.)

AMOS L. DOWNIN, and others, Lessors, &c, *vs.* DANIEL SPRECHER, Tenant in Possession.

*Equity Jurisdiction—Parties to Suits by Representation—Decrees for the Sale of interests of Infants in land—Construction of Devise.*

A testator, who died in 1821, seised of certain lands, devised an undivided sixth part thereof to each of five daughters. The remaining undivided sixth part he devised to his "daughter S. D, during her life, and after her decease to her male children on her body lawfully begotten, or to be begotten." At the death of the testator, S. D had living two sons, and subsequently she had three others, born respectively in 1828, 1831 and 1836. In 1823 a bill in equity was filed by four of the devisees against S. D, her husband, and her two sons then *in esse*, and against the other devisee, charging that a partition of the lands could not be advantageously made among the devisees, and that a sale would be to the interest of all the parties, including the infants. Guardians *ad litem* were appointed for the infants, and all the defendants answered, but no testimony was taken. In February, 1823, the Court passed a decree directing a sale of the real estate as prayed, appointing a trustee to make the same, the proceeds to be applied under the direction of the Court, and directing the trustee on payment to convey the land to the purchaser in fee-simple. Under this decree the trustee sold the land to S, the appellee in this case; the sale was duly ratified and the purchaser obtained a deed from the trustee. Subsequently an auditor's account was stated distributing the proceeds of sale, and there was a creditor's bill and proceedings thereon, but the account was never ratified and the

bill never prosecuted to decree. S. D, the life tenant, died in 1869, and soon afterwards her five sons brought ejectment against S. HELD:

1st. That mere errors or irregularities in the exercise of the jurisdiction of the Court could not be reviewed collaterally.

2d. That the sons of S. D, living at the death of the testator, took vested remainders in fee, subject to open and let in after-born sons.

3d. That the interests of the after-born sons could be destroyed neither by the life-tenant nor by the sons *in esse*.

4th. That the life-tenant is not a sufficient party to represent an estate, except in cases of partition simply, or where the object of a suit is to collect debts, or enforce a lien upon land.

5th. That there is nothing in the general powers of Courts of Chancery in relation to infants, authorizing interference with the property of infants unborn.

6th. That the sale under the decree passed only the title of the parties to the cause.

7th. That the auditor's account and creditor's bill could not perfect the title of S, the purchaser.

8th. That the disposal of the interests of the infant sons *in esse* was within the general powers of Courts of Chancery, and the decree passed their title as well as that of the adults.

APPEAL from the Circuit Court for Washington County. The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON and MILLER, J.

*Z. S. Clagett* and *Daniel Weisel,* for the appellants.

All Acts passed subsequent to the 4th of February, 1823, (the date of the decree,) have no application to this case. Before the Act of 1862, ch. 156, the Court could not exercise the jurisdiction claimed. *Krone vs. Linville,* 31 *Md.,* 138, 144; *Davis vs. Helbig,* 27 *Md.,* 452.

All of the Acts of Assembly prior to the date of this decree, apply to the sale of the interest of infants *in esse,* and not to

remaindermen unborn, nor to remaindermen who may or may not be alive after the termination of the life estate.

The two children, born before 1821, if they had died during the lifetime of the mother, would have had no interest. The children then in existence, and who were alone made parties, had only a contingent interest in the estate after her death. It was a vested remainder, subject to open and let in after-born children, and which was liable to be divested by the death of the children in the lifetime of the mother. *Cochran vs. Van Surlay,* 20 *Wendell,* 374; 11 *Vesey,* 604.

All persons whose rights or interest are affected by the adjudication of the subject, must be brought before the Court as parties. The Court can sell only the title of the parties to the suit, and cannot be called upon to protect a purchaser from a title not in issue, derived from parties unborn, and not parties to the proceedings in equity. *Blackwell on Tax Titles,* 184, 185; *Story's Eq. Pl.,* 159; *Hunter vs. Hatton,* 4 *Gill,* 115, 123; *Tomlinson vs. McKaig,* 5 *Gill,* 276.

As all the parties were not *in esse,* the Court had no power to decree a sale for those in existence. *Cochran vs. Van Surlay,* 20 *Wendell,* 374.

The creditors' bill and the proceedings thereunder are clearly inadmissible. There was no decree in the proceedings for the benefit of creditors, and the auditor's account was not ratified.

*Attorney General Syester,* for the appellee.

Susanna Downin, the tenant for life, having been made a party, there was a virtual and sufficient representation of all proper and necessary interests in the land, and "in such case the decree binds the other persons not in being." *Story's Eq. Pl.,* sec. 145, *citing Giffard vs. Hort,* 1 *Sch. & Lefr.,* 407; *Gaskell vs. Gaskell,* 6 *Sim.,* 643; 1 *Story's Eq. Jur.,* sec. 656, *a, citing Martyn vs. Perryman,* 1 *Ch. Rep.,* 225, &c.

The bill makes out a case within the jurisdiction of the Court, and if the proper parties were before it representing

all proper and necessary interests in the estate, the irregularities or errors in the exercise of the jurisdiction which the averments of the bill conferred on the Court, could only be the subject of appeal or review.

The want of proof to sustain the bill, as well as all other objections set up to the decree by the appellants here, are but the irregular or erroneous exercise of conceded and admitted jurisdiction, and cannot be invoked to impair or assail the rights of a *bona fide* purchaser of real estate under a judicial sale. Every reasonable intendment will be made in support of the title of such a purchaser. *Tomlinson vs. McKaig,* 5 *Gill,* 256; *Davis, and others, vs. Helbig,* 27 *Md.,* 452, 466; *House vs. Wiles,* 12 *G. & J.,* 338; *Elliott vs. Knott,* 14 *Md.,* 121; *Shilknecht vs. Eastburn,* 2 *G. & J.,* 114, 130.

Independent of all question as to the right of the Court to dedicate the moneys as appears from the record, and apart from the conclusions to be derived from the fact sought to be presumed, to wit, that the sale was necessary to pay the debts of the testator, the Court had undoubted power, without reference to the legislation of the State, to convert this entire estate into money, so far as the infants were concerned.— 2 *Story's Eq. Jur.,* secs. 1356, 1357, *and authorities there cited; Dorsey vs. Gilbert,* 11 *G. & J.,* 87.

MILLER, J., delivered the opinion of the Court.

This ejectment is for an undivided sixth part of certain lands in Washington county. The plaintiffs claim title under the will of their grand-father, and the defendant as purchaser under a decree in equity. The main facts of the case are these:

John Johnston died in 1821 seised in fee of the lands in controversy, leaving a will by which he devised an undivided sixth part thereof to each of five daughters, the devise to one being charged with the payment of the sum of $3,061 to the other devisees named in the will, in equal shares. The remaining undivided sixth part he devised to his "daughter,

Susanna Downin, *during her life,* and after her decease, to her *male* children on her body lawfully begotten *or to be begotten,* except the value of $1,000 worth of the said land, of which said $1,000 worth of land the other legatees herein named are to have equal shares; the *said children* to hold in *fee-simple* after her death." At this time Mrs. Downin had living two sons, William and David, and she subsequently had three others, John, Joseph and Amos, born respectively in 1828, 1831 and 1836.

In 1823 a bill in equity was filed by four of these devisees against Mrs. Downin, her husband, and her two sons then *in esse,* and Margaret Johnston, the other devisee. This bill, after setting out the devises of the will, charges that Mrs. Downin had then living two male children on her body lawfully begotten, viz.: William Downin and David Downin, both of whom were infants; that a partition of the lands could not in any manner be advantageously made amongst the said devisees, and that it will be for the interest and advantage, both of the said infants and of the other devisees above mentioned, to sell the said lands, and forasmuch as it is the province of a Court of Equity to order the sale of lands in which infants hold an interest in common with other persons, prays for a sale thereof, and for general relief. Guardians *ad litem* for the infants were appointed, and answers of all the defendants filed, but no commission to take testimony was issued and no proof taken. In this state of case, the Court, on the 4th of February, 1823, passed a decree directing *a sale* of all the real estate in the proceedings mentioned, appointing a trustee to make the same, the proceeds to be brought into Court, to be applied under the direction of the Court according to the rights of the several parties entitled to receive the same, and directing the trustee, on payment of the money, to convey the land to the purchaser in fee-simple. Under this decree the trustee sold the land to the defendant, the sale was duly ratified by the Court, and the purchaser subsequently obtained a deed from the trustee. Mrs. Dow-

nin, the tenant for life, died in 1869, and shortly thereafter, her five sons above named instituted this action.

The difficulty presented is as to the effect of this decree—was it binding upon the three sons not parties to the bill and not then *in esse*, so as to divest their title to the land? This question goes to the power and jurisdiction of the Court, and not to mere errors or irregularities in its exercise, for it is clear, these latter cannot be reviewed collaterally in this action. *House vs. Wiles,* 12 *G. & J.,* 338. It is to be noted, this was not a creditors' bill for a sale of the real estate to pay the debts of the testator, nor to enforce any charge which he had imposed upon the land, and it was conceded in argument that, up to that period, *no statute* had been passed conferring any jurisdiction upon the Chancery Courts that could give to this decree the effect of binding the interests of these unborn sons. Since that time, the Act of 1862, ch. 156, has provided for such cases, and in express terms made the decree of sale, if all the parties *in being* are parties to the proceeding, binding upon all persons, *whether in being or not,* who claim any interest in the land under any of the parties to the decree, or *under any person from whom* any of the parties to such decree claim. The facts that this law was passed, and that prior thereto legislative aid had, in many instances, been invoked by special laws to meet identical and similar cases, very clearly show what construction the Legislature placed upon the powers of the Equity Courts, and what was the prevailing opinion of the profession. But these, though always entitled to the highest respect, and often affording important aid to judicial determinations, are not conclusive upon the Courts, and we must, therefore, consider the grounds taken in argument by the appellee's counsel. His position is that, without reference to authority derived from legislation, the Court had power by decree of sale to convert this entire estate into money, and that these after-born children are bound by that decree.

It is insisted in the first place, that Mrs. Downin, the life-tenant and her sons then living, having been made parties,

there was a *virtual and sufficient representation* of all proper
and necessary interests in the land, and in such case the decree
binds the other persons not in being.   The doctrine of repre-
sentation, which undoubtedly is firmly established in the
English Courts, is thus stated in *Calvert on Parties,* 48 *to*
52 : "Another kind of representation admitted in the prac-
tice of Courts of Equity, is the representation of all persons
having interests in real property, subsequent to the first estate
of inheritance, and *liable to be defeated by a recovery.*   This
representation takes place in the person *entitled to the first
estate of inheritance.* * * * This modification of the general
rule has been adopted upon grounds partly of necessity, partly
of convenience, and upon a principle of justice to persons enti-
tled to remote interests, that they may not be exposed to any
vexations which the caprice or self-interest of those who actu-
ally enjoy, or wish to claim a property, might chance to pro-
duce.   Another important principle in favor of this doctrine
is, that in the person of the first tenant in tail there is brought
before the Court one, whose interest is of such a nature as to
insure his giving a fair trial to the legal right.   This last
principle seems to have established the *limit* to the number of
interests, which may be represented by the person entitled to
the first estate of inheritance ; * * * they are interests which
the tenant in tail can *destroy,* and which for that very reason,
there is peculiar propriety in empowering him to defend."
Thus far neither the rule nor its reasons have any application
to the case before us.   By this will the sons of Mrs. Downin,
living at the death of the testator, took vested remainders in
fee, subject to open and let in *after-born sons.*   The interests
of the latter could be destroyed neither by the life-tenant nor
by their living brothers; their rights derived under the will
were indestructible by act of any of the parties having in-
terests prior to or in common with them, and it would be
strange if, in the absence of legislative sanction the Court
could work out a *representation* for them through these
parties collectively, for the purpose of divesting title to

land, and that too merely to subserve, as the bill alleges, the interest of the representatives themselves.

But it is contended this doctrine of representation has been carried further by the *dicta* of Lord REDESDALE, in *Gifford vs. Host*, 1 *Sch. & Lef.*, 409, to the effect that "it is sufficient to bring before the Court the first tenant in tail in being, and if there be no tenant in tail in being, the first person entitled to the inheritance, and if no such person then *the tenant for life.*" No case however has been cited, and we have found none where it has been decided the tenant for life was a sufficient party to represent the estate, except in cases of *partition* simply, or where the object of the suit was to collect debts or enforce a charge or lien upon the land. *Wills vs. Slade*, 6 *Ves.*, 498, and *Gaskell vs. Gaskell*, 6 *Simons*, 643, were cases of *partition* and not of sale. The Statutes of New York, under which *Cheesman vs. Thorne*, 1 *Edw. Ch. Rep.*, 629, was decided, had declared that a decree of sale for the purpose of partition should be binding and conclusive not only upon the parties thereto, but also upon all "who by any contingency contained in any will or grant, or otherwise, may be or *may become* entitled to any beneficial interest in the premises;" and it was hence well held in that case that the decree bound the rights of persons not *in esse*. But when the Vice-Chancellor there said, if there were no statutory provision on the subject, the case of *Wills vs. Slade*, would be authority for a decree in such cases, he must be understood as meaning it was authority for a decree of partition merely, for it is clearly not an authority justifying a decree of sale divesting the title of parties not in being, to the entire estate. In *Lloyd vs. Jones*, 9 *Ves.*, 37, the whole doctrine as to this kind of representation is well defined and limited by Lord ELDON. The general rule that the Courts will regard the first tenant in tail *in esse* in whom an estate of inheritance is vested, as the representative of subsequent estates and interests, is there admitted, but it is held it is not to be taken as true that the remainderman is universally bound, for he is

31 v. 35

bound only in cases where the suit is not under a contract with the tenant in tail, but is a suit to bind the land in regard to charges equally binding and affecting all persons who take *per formam doni*. In *Harris vs. Harris*, 6 *G. & J.*, 111, all parties in interest, including all who could by possibility take any interest under the will, by way of executory devise or otherwise, were in being, and were made parties to the suit.

In *Bolgiano vs. Cooke*, 19 *Md.*, 375, all parties in interest in being were parties to the cause, including the tenant for life, the tenants in fee in remainder, and the *trustee*, to whom the legal estate was devised in fee, and *who represented all interests vested or contingent*, and that case arose after passage of the Act of 1835, ch. 380. In our opinion, it would be an unwarranted extension of the rule of representation to apply it to this case in order to affect the rights of parties not in being, and not parties to this bill. Such application is justified by no express adjudication, nor by the reasons upon which the doctrine was originally established.

But it is again urged, that all the State legislation authorizing the sale of real estates belonging to infants, is but a modification and enlargement of a previously existing and acknowledged power of Courts of Chancery, and without such legislation, they had undoubted power to convert the real estate of infants into money, and that such conversion was not a spoliation of their property or an application of it to other parties. All this is true, but it is not seen how it thence follows, the Courts ever had power to meddle with the property of children unborn. The infants must have been in existence before they or their property came under this general guardianship and control of the Courts. Even the power of the Legislature to enact laws authorizing sales of land to affect the title of parties not in being, has been questioned almost as often as it has been exerted; and it was only after a serious contest and struggle that such laws have been finally sustained by the Courts as constitutional and valid.

Apart from legislative authority, which was not then given, and the rule of representation, which we have decided, does not apply, this decree had no operation or effect upon the title of these after-born sons. The sale under that decree passed only the title of the parties to the cause, and the purchaser took their interests only. To all such cases the doctrine of *caveat emptor* applies. 7 *Md.*, 342; 19 *Md.*, 391.

Nor is the legal title of the appellee perfected by what the record shows in respect to the auditor's account distributing the proceeds of sale, and the creditors' bill and proceedings thereon. That account was never ratified, and the creditors' bill was never prosecuted to decree. We are not now dealing with equities, but with the *legal title* in a Court of law, and it has not been pretended that title was transferred either by the account or the creditors' bill.

It follows there was error in the rejection of the plaintiffs' third prayer to the effect that upon the evidence offered and the facts agreed upon, John, Joseph and Amos L. Downin are entitled to recover three undivided fifth parts of one undivided sixth part of the land in controversy, and for this error the judgment must be reversed and a new trial awarded.

We concur in the rejection of the plaintiffs' first and second prayers, which proceed upon the assumption that the decree was also ineffective as to the infant defendants to the bill, for want of jurisdiction. All parties in interest then *in esse* were made parties to the bill, and whether others would ever be interested depended upon a contingency. If there had been no after-born sons it could not, in our judgment, be successfully asserted that the purchaser would not have taken a good title to the whole estate. As respects the adult parties to the suit, they of course could not be heard to question the decree. As respects the two infant sons, parties to the cause, the disposal of their interests by the decree, if it cannot be rested strictly upon the provisions of existing laws, comes under the general powers of Courts of Equity over the persons and estates of infants in being, which have been frequently exer-

cised to convert realty into personalty for their benefit upon allegation and proof that such change would promote their interests.    *Dorsey vs. Gilbert*, 11 *G. & J.*, 87.    These sons then living did not, as we have said, take a contingent remainder, dependant upon their surviving the life-tenant, but were seised in fee of the entire remainder subject to open and let in after-born sons, who as each was born became seised of his proportionate share as tenant in common with his brothers. If one of these living sons had then been of age, or if any other adult had been jointly interested in this vested remainder, there is no doubt a bill could have been filed for a sale thereof during the life of the tenant for life, and this would have been strictly within the provisions of the Act of 1785, ch. 72, section 12.  *Billingslea vs. Baldwin and Wife*, 23 *Md.*, 85.   The other devisees holding undivided interests in fee, the mother and life-tenant of the other undivided share with her husband who was the father and natural guardian of his sons, and the infant sons themselves then living and seised of the remainder in fee subject only to be reduced in extent as above stated, were made parties, and the bill alleges it would be for the *interest and advantage* of these infant parties that the land should be sold.    All the defendants answered and the decree passed.    In this state of case, and in view of the acknowledged power and authority of Courts of Equity over the persons and property of infants we cannot hold there was an entire absence of jurisdiction to decree a sale of their interests in this land.    Our opinion has proceeded entirely upon the ground that there was no jurisdiction or authority in the Court to impart to its decree the effect of binding the rights and interests of the after-born sons.    The purchaser bought, subject to the contingency of such sons coming *in esse*, and having his purchase cut down to the extent of their interests, but he took the interests of the adults, and the interests of the infants parties to the bill, liable to be thus diminished.

*Judgment reversed and*
*new trial awarded.*

(Decided 20th March, 1872.)