# MARYLAND REPORTS.

## OCTOBER TERM, A. D., 1888.

CUMBERLAND DUGAN and DWIGHT E. LYMAN, Trustees *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE, and others. THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* CUMBERLAND DUGAN and DWIGHT E. LYMAN, Trustees, and others.

*Tenants in Common—Petition—Sale of Undivided interest—General jurisdiction—Art. 16, sec. 99, of the Code of 1860—Service of Process on a Corporation—Art. 75, sec. 99, of Code of 1860—Appearance—Waiver—Allotment of Land—Improvements.*

The heirs of C., and the City of Baltimore, were tenants in common of an undivided fourth part of a tract of land containing ten acres and two-thirds of an acre. Besides its interest in this one-fourth, the City of Baltimore was also the owner of one-half of said tract; the remaining one-fourth belonging to P. A bill was filed under section 99 of Article 16 of the Code of 1860, by the heirs of C. to which the City of Baltimore was the sole defendant, alleging that the plaintiffs and the defendant were tenants in common of one undivided fourth part of the land in question, and that it was not susceptible of partition, and praying that it might be sold, and the proceeds of sale divided among the parties according to their respective interests. Under a decree passed in this case, the one-fourth interest of the parties was sold. HELD:

1st. That the Court erred in decreeing the sale of the one-fourth interest belonging to the heirs of C. and to the City of Baltimore, but having a general jurisdiction to decree a sale of property held by co-tenants, its judgment was binding on the parties to the suit, until reversed on appeal.

Dugan and Lyman, Trustees *vs.* Mayor, &c. of Baltimore, *et al.*

2nd. That the purchaser merely acquired the interest of the parties to the suit in the one undivided fourth, and as such was a tenant in common with the owners of the remaining three-fourths of the property, whose rights and interests were in no manner affected by the decree, and sale under it.

The object of partition being a division of the property among the several co-tenants so as to put an end to the co-tenancy, and to vest in each person a sole estate in a specific part of the property, there cannot be a partition of an undivided one-fourth interest in a tract of land so as to vest in each co-tenant a separate estate; for the reason that after such partition the owners of the undivided one-fourth interest would still be tenants in common with the owners of the remaining undivided three-fourths.

Under section 99 of Article 16 of the Code of 1860, the Court may decree the sale of property, if a partition cannot be made without loss or injury to the parties interested. But the Court has no right to decree a sale, except under such circumstances as would have justified a partition before the statute; and as there could not be a partial partition there cannot be a sale of a part interest in the property. Under the statute the entire property must be divided or sold, and all the co-tenants must be made parties.

The Code (Art. 75, sec. 99,) of 1860, provides that process against a corporation shall be served upon the president, or any director or manager or other officer of such corporation. A *subpœna* against the City of Baltimore was returned endorsed "summoned," and service admitted by the City Solicitor. The City Solicitor appeared to the suit, and the proper officers of the city received the city's share of the proceeds of sale, and executed a release therefor. HELD:

That the defects of the sheriff's return of service of summons, and the irregularities in passing the decree, must be considered as having been waived.

Where one tenant in common has made improvements on the property held in common, in the belief that they were located on his own land, a Court of equity, in decreeing partition, will allot to him, so far as can be done consistently with an equitable partition, that part of the land on which the improvements are situate, without taking into consideration the value of the improvements.

APPEALS from the Circuit Court for Baltimore County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, BRYAN, and MCSHERRY, J.

*Robert R. Boarman*, for Dugan and Lyman, Trustees.

*Bernard Carter, City Solicitor*, for the Mayor and City Council of Baltimore.

*John Johnson*, for Mary H. Presstman and others.

*A. H. Robertson*, and *William A. Fisher*, for Emma Presstman.

ROBINSON, J., delivered the opinion of the Court.

We shall the better understand the questions in this appeal, by referring to the facts out of which this protracted litigation has arisen. The heirs of Nicholas C. Carroll, and the City of Baltimore, were tenants in common of an undivided fourth part of a tract of land containing 10⅔ acres. Besides its interest in this one-fourth, the City of Baltimore was also the owner of one-half of said tract, the remaining one-fourth belonging to George Presstman.

In 1874 a bill was filed by the Carroll heirs, to which the City of Baltimore was the sole defendant, alleging that the plaintiffs and the defendant were tenants in common of one undivided fourth part of the land in question, and that it was not susceptible of partition, and praying that it might be sold and the proceeds of sale divided among the parties according to their respective interests. Under a decree passed in this case, the one-fourth interest of the parties was sold, and N. Carroll Spence became the purchaser. Some time afterwards, George Presstman died, and his one-fourth

interest in said land passed under his will to his sur-
viving children, and to Emma Presstman, daughter of
his deceased son William.

In 1881 a bill was filed by Emma Presstman, by her
next friend, for a partition or sale of the entire tract,
and to this bill all the parties in interest were made
defendants. On the 31st of July, 1882, an interlocu-
tory decree for partition was passed, directing one-
half of the land to be allotted to the City of Balti-
more, one-fourth to N. Carroll Spence, and the other
one-fourth to the Presstman heirs, and commissioners
were appointed to make said partition.

In the meantime, the City of Baltimore had erected
a large marble pump house with various attachments
and pipes used in connection with the water supply
of the city. These improvements the commissioners
valued at $43,000, and the 10⅔ acres of land at $93,000,
making the entire valuation $136,000. The City of Bal-
timore being entitled to one-half interest, the com-
missioners allotted to it two acres and three roods of
land valued at $25,000, and the improvements made
by the city valued at $43,000, making $68,000, and the
remainder of the land they divided between the Presst-
mans and Spence. This return having been set aside
for certain irregularities, new commissioners were ap-
pointed, and in their return they valued the improve-
ments at $48,000, and the land at $92,000, making the
entire valuation $140,000. And in making partition
they allotted to the City of Baltimore the improve-
ments valued at $48,000, and three acres and two-
thirds of an acre of land valued at $22,000, making
$70,000, and the remaining one-half they allotted to
the Presstmans, who in the mean time had acquired
Spence's interest. The commissioners in making this
partition acted upon the theory that all the tenants
in common were entitled to share in the improvements

made by the city. Exceptions having been filed, the partition thus made was set aside, and the Court remanded the commission with instructions to the commissioners, to allot to the city that portion of the land on which it made the improvements, without charging the city with the valuation of said improvements. Accordingly, the commissioners made a new partition, valuing the $10\frac{2}{3}$ acres of land at $92,000, and allotting to the city for its half interest, six and two-thirds acres valued at $46,000, and the remainder of the land to the Presstmans.

From the *pro forma* decree ratifying the partition thus made, appeals were taken by the *Mayor and City Council of Baltimore*, and by *Cumberland Dugan and Dwight E. Lyman, Trustees under the will of George Presstman, and by Mary H. Presstman.*.

1st. The appeal of the Mayor and City Council of Baltimore.

By the interlocutory decree passed July 31st, 1882, it was adjudged that the City of Baltimore was entitled to one-half of the $10\frac{2}{3}$ acres of land, its interest in the one-fourth having been sold under the decree in the suit by the Carroll heirs. Now it is argued that the city's interest in this undivided one-fourth is in no manner affected by the sale under the decree in the Carroll suit, because the Court, it is said, had no jurisdiction either to decree a partition or a sale of the property. In other words, the Court had no jurisdiction of the subject-matter. Now the bill in that case was filed under sec. 99, Article 16, old Code, which provides:

"The Court may decree a partition of any lands or tenements, or any right, interest or estate therein, either legal or equitable, on the bill or petition of any joint tenant, tenant in common, or any parcener or any concurrent owner; or if it appears that the said

lands or tenements, or right, interest or estate therein cannot be divided without loss or injury to the parties interested, the Court may decree a sale thereof;'' and we quite agree the Court erred in its construction of this statute, and that it ought not to have decreed the sale of the one-fourth interest belonging to the Carroll heirs and the City of Baltimore. The object of partition is a division of the property between the several co-tenants so as to put an end to the co-tenancy, and to vest in each person a sole estate in a specific part or allotment of the property. And if so, there cannot be a partition of an undivided one-fourth interest in a tract of land, so as to vest in each co-tenant a separate estate, for the reason that after such partition the parties would still be tenants in common with the owners of the remaining three-fourths. Besides, a tenant in common is not seized of any particular part of the property. His interest is an undivided interest in the entire land, and an allotment of a specific part to him, would not bind the other co-tenants who were not parties to the proceedings. A partial partition cannot therefore be made, nor can a partition of any kind be made without making all the co-tenants parties. It is so laid down by Lord COKE, and so far as we know, has never been questioned. *Coke Littleton,* 180*a*

Now partition being a matter of right, the Court was bound to decree it without regard to whether it was beneficial or injurious to the parties. It had no power, under any circumstances, to decree a sale and distribute the proceeds among the parties according to their respective interests. It was to remedy this, that our statute provided, if a partition could not be made *without loss or injury to the parties,* the Court could decree a sale of the property. But the Court has no right to decree a sale, except under such circumstances

as would have justified a partition before the statute. And inasmuch as there could not be a partial partition, for the same reasons there cannot be a sale of a part interest in the property. The statute means that the entire property shall either be divided or sold, and if so, all the co-tenants must be made parties.

But while such is our construction of the statute we cannot agree that the Court in passing the decree of July 31st, had no jurisdiction of the subject-matter, and that the purchaser acquired no title to the interest sold under it. The bill was filed for the partition or sale of an undivided fourth part of the property, in which the plaintiffs and defendants were tenants in common. It was filed under Art. 16, sec. 99, of the Code. The Court had a general jurisdiction to decree a sale of property held by co-tenants, and it had the jurisdiction to determine whether, under the Code, it had the power to sell an undivided interest in the property. Jurisdiction is the power to hear and determine. If the judgment of the Court is erroneous, the remedy is by appeal, and until reversed on appeal the judgment is binding on the parties to the suit. The decree and sale under it could not of course affect in any manner the rights or interests of the owners of the remaining three-fourths of the property. The purchaser merely acquired the interest of the parties to the suit in the one undivided fourth, and as such, he is a tenant in common with the owners of the remaining three-fourths of the property. Then again, the jurisdiction of the Court is denied on the ground that the City of Baltimore was not summoned. The subpœna was returned with the following endorsement, "summoned, George P. Kane, Sheriff," "service of the within admitted, Albert Ritchie, City Solicitor." In serving process on a corporation the Code provides that it shall be served on the president or director or manager or other officer of the corporation. 1 *Code, Art.* 75, *sec.* 99.

The return of the sheriff, we agree, ought to show upon what person or officer the process was served, so that the Court may judge whether it was in law a valid service on the company, otherwise that would be left to depend upon the judgment or discretion of the sheriff. *Northern Central Railroad Company vs. Rider,* 45 *Md.*, 24. But the record shows that the solicitor for the city appeared to the suit, and further that the proper officers of the city received the city's share of the proceeds of sale, and executed therefor a release. Whatever defects there may have been in the summons and the irregularities in passing the decree, must under such circumstances be considered as having been waived.

And this brings us to the questions in the appeals of Mary H. Presstman and the Trustees under the will of George Presstman. And here the first objection to the commissioners' return, is on the ground that the commissioners allotted to the city, that portion of the property on which the improvements were located, without charging the city with the cost of such improvements. It does not seem to us, however, that the other co-tenants have any just ground to claim an interest in the improvements made by the city at its own cost. "In matters of partition" says Judge STORY, "a Court founds itself upon its general jurisdiction as a Court of equity, and administers its relief, *ex æquo et bono* according to its own notions of general justice and equity between the parties." 1 *Story's Equity Juris.,* sec. 656 *b*.

And we take the law to be well settled, that where one tenant in common has made improvements on the common property, with or without the consent of his co-tenant, a Court of equity in decreeing partition will see that he shall have the benefit of his improvements, by allotting to him, so far as can be done con-

sistently with an equitable partition, that part of the land on which such improvements are located, and this allotment will be made to him according to the actual value of the land itself, without taking into considera-. tion the value of the improvements.  1 *Story's Equity Juris.,* 65 *b; Freeman on Co-tenancy and Partition, sec.* 509; *Crafts vs. Crafts,* 13 *Gray,* 360; *Town vs. Needham,* 3 *Page Ch.,* 545; *Brookfield, et al. vs. Williams, et al.,* 1 *Green, N. J. Ch.,* 341; *Pope, et al. vs. Whitehead, et al.,* 68 *N. C.,* 191.

Besides, in this case the city was the owner of the land adjoining the property, and the improvements, it is clear, were made by the city in the belief that they were located on its own land, and the mistake was not discovered till the survey was made by the commissioners appointed to make partition of the common property.  The city is not however claiming compensation for such improvements from the other co-tenants, and this view of the case is therefore quite immaterial. A good deal was said in the argument about the overvaluation of the property.  This valuation was made by commissioners appointed by the Court, persons, we are bound to presume, of sound judgment, and from their experience, and knowledge of the property, capable of forming a correct opinion as to its value.  And, besides, they had the benefit of the judgment of a number of persons living in the neighborhood, who were examined by them in regard to the value of the property,  It is situate near the city, and is valuable mainly for building purposes, and we are not surprised to find the several witnesses differ as to its actual value.  As suggested in the argument, the valuation by the commissioners seems to us to be a fair average between the extremes of conservative and extravagant opinions.  We have no reason to suppose that another valuation by different commissioners would be more

correct or satisfactory, nor do we find anything in the record in this respect to justify a reversal of the decree below.

*Decree affirmed.*

(Decided 9th January, 1889.)