HARDY *v.* LEAGER ᴇᴛ ᴀʟ.

[No. 151, October Term, 1956.]

*Decided April 1, 1957.*

The cause was argued before BRUNE, C. J., HENDERSON, COLLINS, HAMMOND and PRESCOTT, JJ.

*Howard Wood,* for appellant.

*James E. Thompson, Jr.,* and *Richard W. Whitlock,* for appellees.

BRUNE, C. J., delivered the opinion of the Court.

The purchaser of one of four tracts of land sold pursuant to a decree of the Circuit Court for Queen Anne's County appeals from an order of that Court overruling his exceptions to the sale and ratifying and confirming the sale. The appellees are the original complainant, upon whose bill the sale

was decreed, and the trustee appointed to make the sale. (There is a similar appeal pending involving another tract sold pursuant to the same decree, *Sause v. Leager,* No. 182, October Term, 1956. Argument of that case has been deferred pending the decision of this.)

Under the will of their grandfather and upon the death of their mother in 1942, James E. G. Leager, the complainant, and his late sister, Katherine P. Leager, became the owners, in equal shares, in fee simple, of the four tracts here involved. In 1943, Katherine P. Leager died leaving a will (1) devising and bequeathing all of her property to her brother, James E. G. Leager, for life, and (2) after his death, making sundry pecuniary bequests and devising and bequeathing the residue of her property (a) to her brother's children living at the time of his death, in equal shares, or (b) if he should die leaving no "heirs" surviving him, then, in equal shares, to the children of four named first cousins who might be living at the time of the brother's death. At the time of filing his bill for the sale of the real estate, James E. G. Leager was thus the owner in fee of a one-half undivided interest therein and of a life estate in the other half.

The respondents named in the bill are the only child of the complainant, an infant, the children—all infants—of three of the named first cousins, the fourth of those cousins, who had no child (and whose interest is not clear), two churches and three individuals who were pecuniary legatees and the widow and son of a pecuniary legatee who had predeceased the testatrix. It is stipulated that: all parties interested in the real estate who were in being at the date of the decree for sale were parties to the cause and were duly summoned; that all of the infant respondents answered the bill in usual form through guardians *ad litem,* duly appointed; that none of the adult or corporate respondents answered the bill; and that a decree *pro confesso* was duly passed as to each of the adult and corporate respondents.

The bill briefly described each of the three farms and the

wood lot involved in the case, gave title references, and referred to the wills of the complainant's grandfather and of his sister, copies of which were filed as exhibits and the pertinent parts of which have been set forth above, stated the complainant's interest in the four tracts and identified the individual respondents (other than the pecuniary legatees). By paragraph 7, it alleged: "That the said real estate is of such nature that it will not admit of being divided among the parties entitled thereto, as aforesaid, without loss or injury to said parties, and that in order to make division of said interests, it will be necessary that said real estate be sold, and the proceeds thereof divided amongst the parties according to their several interests." This paragraph states the only grounds alleged for making the sale. The prayers were for: (a) a decree "for partition by the sale of said real estate;" (b) for the appointment of a trustee "to carry out said sale and partition;" (c) for the appointment of a trustee "to administer the proceeds derived from the undivided one-half interest passing under the will of Katherine Philamonea Leager, deceased, according to the terms" thereof; and (d) for other and further relief.

The bill is evidently framed with Section 170 of Article 16 of the Code (1951) in view, and the ground alleged for the relief sought is stated virtually in the words of that Section. The decree of sale directs that "the real estate described * * * be sold for the purpose of partition." The purchaser's exceptions to the sale are based upon the grounds (1) that the sale does not comply with Section 264 of Article 16 of the Code (1951), providing for sale for reinvestment, so as to bind possible after-born remaindermen and (2) that under Section 170 the Court did not have jurisdiction to order a sale which would bind possible after-born remaindermen.

In an opinion incorporated in the order overruling the purchaser's exceptions, the trial court took the view "that the right of partition is paramount to the interests of unborn persons interested in the real estate" and that in the instant case it was unnecessary to comply with the provisions of * * * Section 264 * * *." The court also stated that: "This court did find, however, * * * that the proposed sales would be

advantageous to all parties interested in said real estate whether in being or not, prior to and as a prerequisite of its decree for sale of said real estate; and the court is still of the same opinion." The bases for this finding were: first, that the evidence showed that some buildings on each of the improved parcels were in only fair and some were in poor condition, and that there was little or no marketable timber on the wood lot; and second, that so long as an undivided half-interest in the improved properties continued to be owned "under * * * the will of Katherine P. Leager, it would be impractical or impossible to replace buildings as necessary without applying to the court to encumber the property."

The right of a cotenant to a partition in kind of real estate, if feasible, existed and continues to exist, independent of any statute. Section 170 of Article 16 of the Code is derived in part from Section 12 of Chapter 72 of the Acts of 1785, in part (and for present purposes more importantly) from Chapter 311 of the Acts of 1831, and in part from other statutes. The statute did not impair the previously existing right of partition, but added another means of attaining separate enjoyment—that is, by sale "where the interest of all the parties requires that mode of partition." *Campbell v. Lowe,* 9 Md. 500; *Johnson v. Hoover,* 75 Md. 486, 23 A. 903; *Miller, Equity Procedure,* Secs. 393-397, 428. Prior to the adoption of a statute conferring such power, a court of equity could not order a sale and distribute the proceeds, and it was to remedy this situation that the statute was passed. *Dugan v. Baltimore,* 70 Md. 1, 6, 16 A. 501; *Roche v. Waters,* 72 Md. 264, 271, 19 A. 535; *Miller,* op. cit., Sec. 397.

There is no challenge to the right of the complainant as the owner of an undivided one-half interest in fee in these four tracts to such a partition by sale under Section 170 of Article 16. (See *Tolson v. Bryan,* 130 Md. 338, 100 A. 366, where the complainant had a similar ownership, but had no interest in the other undivided one-half, and *Billingslea v. Baldwin,* 23 Md. 85, where holders of a reversionary interest were held entitled to a partition by sale of the reversion on a bill brought during the existence of a life estate in the property owned by another person.) The complainant's right to a

partition may be conceded to exist, notwithstanding the interest of possible unborn remaindermen, and to that extent, to be "paramount" to their rights. The rights of all persons who are parties to the proceeding, including those who are represented, may be transferred by a sale, and the interests of the possible unborn remaindermen in the proceeds of sale may be protected under the prayer of the bill and the decree in conformity therewith providing for the appointment of a trustee to hold one-half of the proceeds for the benefit of the persons entitled thereto, under the will of the complainant's sister, Katherine Leager. That, however, only leads us to the question whether or not the interests of possible unborn remaindermen are bound by the decree of sale.

Prior to the passage of Chapter 156 of the Acts of 1862, which was somewhat amended by Chapter 273 of the Acts of 1868 and as so amended constitutes Section 264 of Article 16 of the Code (1951), "courts of equity in this State had no jurisdiction to give to a decree the effect of binding the interests of parties not then in being, there being no such authority under the general powers of chancery courts nor by statute." *Miller, Equity Procedure,* Section 411; *Downin v. Sprecher,* 35 Md. 474; *Shreve v. Shreve,* 43 Md. 382; *Long v. Long,* 62 Md. 33. The appellees have presented an able argument in support of their contention that the unborn remaindermen are represented by others who are parties to the suit and consequently that their interests would be bound by the sale. We are not in agreement with this contention, and think that under *Downin v. Sprecher* and *Long v. Long, supra,* Section 170 alone would not sustain the jurisdiction of the Circuit Court to bind the interests of the unborn possible remaindermen. See also the *Shreve Case,* which involved an election to take property sought to be partitioned at a valuation fixed by commissioners.

In *Downin v. Sprecher, supra,* there were devises of one-sixth undivided interests to five daughters of the testator (one of which was subject to a charge) and a devise of the remaining one-sixth interest to another daughter, Mrs. Downin, with a remainder in fee, in equal shares, to her sons "begotten or to be begotten." A bill for partition was filed

against Mrs. Downin and her husband and their then living two minor sons by other devisees under the will. The bill alleged that the lands could not be advantageously partitioned and that it would be for the interest and advantage of the two infants and of all other parties that the lands be sold. The decree directed that the lands be sold and provided for the appointment of a trustee to make the sale and directed him to bring the proceeds of sale into court to be applied under the direction of the court according to the rights of the several parties entitled to receive the same. There was a later auditor's account distributing the proceeds, but it was never ratified and the opinion does not make clear the ultimate disposition of the proceeds. The life tenant had three other sons born after the decree for sale. She died in 1869 and her five sons then living brought a suit in ejectment for an undivided one-sixth interest in the lands sold in the partition proceedings. The two sons who, as infants, had been parties to the partition suit were held to be barred, but a judgment against the three after-born sons was reversed. The defendant urged strenuously that they should be bound under the doctrine of representation, but as to this Judge Miller said (at p. 482) : "In our opinion it would be an unwarranted extension of the rule of representation to apply it to this case in order to affect the rights of parties not in being, and not parties to this bill. Such application is justified by no express adjudication, nor by the reasons upon which the doctrine was originally established."

The discussion of vested interests in *Downin v. Sprecher, supra,* and of contingent interests in *Long v. Long, supra,* does not, we think, indicate that the doctrine of representation is applicable to the one and not to the other. In *Downin v. Sprecher, supra,* at p. 483 of 35 Md., the Court succinctly stated: "Apart from legislative authority, which was not then given, and the rule of representation, which we have decided, does not apply, this decree had no operation or effect upon the title of these after-born sons." At page 484, the Court reiterated this thought, saying in its conclusion: "Our opinion has proceeded entirely upon the ground that there was no jurisdiction or authority in the court to impart

to its decree the effect of binding the rights and interests of the after-born sons. The purchaser bought, subject to the contingency of such sons coming *in esse,* and having his purchase cut down to the extent of their interests, but he took the interests of the adults, and the interests of the infants parties to the bill, liable to be thus diminished."

In *Ball v. Safe Deposit & Trust Co.,* 92 Md. 503, 48 A. 155, this Court said (at p. 506 of 92 Md.) that *Long v. Long, supra,* "distinctly held that prior to the Act of 1868, ch. 273, a Court of equity had no power to decree a sale of real estate to bind the interest of unborn contingent remaindermen."

Section 264 of Article 16 is designed to meet just the type of situation in which Section 170 fell short, as in *Downin v. Sprecher, supra,* and the "benefit of the law embraces almost every conceivable estate in which unborn children may be interested." *Miller, Equity Procedure,* Sec. 411, and cases there cited. As said in *Ball v. Safe Deposit & Trust Co., supra* (92 Md., at 507-8): "The jurisdiction of a Court of equity to decree a sale of land under this Act rests upon the concurrence of two conditions precedent, and they are that all parties in interest and in being, who would be entitled, if the contingency had happened at the date of the decree must be parties to the proceedings and the sale must be made to appear to be advantageous to the parties concerned. If these conditions, as contemplated by the Act, are not complied with, *at the date of the decree,* the Court will be without jurisdiction to decree a sale. The language of the Act is, 'and all such decrees if all the persons are parties who would be entitled if the contingency had happened *at the date of the decree,* shall bind all persons whether in being or not, who claim any interest in said land under any of the parties to the decree.' "

The *Ball Case* is also authority for the purchaser raising by exceptions to the sale such objections as are here presented.

We note at this point that the proof required to warrant a sale under Sec. 170 of Article 16 differs from that required under Sec. 264. Under Sec. 170, it must be shown that the lands "cannot be divided without loss or injury to the parties

interested." Under Sec. 264 a court of equity may decree a sale "if it shall appear to be advantageous to the parties concerned." A principal purpose of Sec. 264 is a sale for reinvestment, and its use seems quite appropriate as to the undivided half interest passing under the will of Katherine P. Leager. Because of the difference in language between the two statutes, a finding that a sale would be advantageous to all parties interested in the real estate is not a prerequisite to a decree for sale under Sec. 170, though it clearly is under Sec. 264.

Although there should be both an allegation and proof of benefit to all parties concerned, including those not yet in being, in a proceeding for sale under Sec. 264, sales are upheld where there is either an allegation of benefit, as in *Scarlett v. Robinson,* 112 Md. 202, 76 A. 181, or proof thereof, as in *Beggs v. Erb,* 138 Md. 345, 113 A. 881. The difficulty which the appellant urges in the present case is that there is neither an allegation of benefit to all parties concerned nor any sufficient proof thereof. He is clearly correct in pointing out that there is no allegation of benefit in the bill. The Chancellor found proof of benefit in the fact that some of the buildings were in either only fair condition or in poor condition, and that there was little marketable timber on the wood lot. From this he evidently inferred that replacements would be necessary and he took judicial notice of the fact that it would be necessary to apply to the court for authority to encumber the interest passing under the will of Katherine P. Leager to provide funds needed for such purposes. Despite some doubt, we think that this falls short of the proof necessary to make a sale of these properties "appear to be advantageous to the parties concerned."

Though we are of the opinion that the order overruling the purchaser's exceptions should not be sustained, we note his request that in such event the case be remanded to permit an amendment of the bill and the production of evidence of advantage to all parties concerned so as to bring the case clearly within the purview of Section 264 of Article 16 of the Code, while preserving the rights of all the reported purchasers; and we are informed that a similar situation exists

574

with regard to the purchaser and his assignees in No. 182. On the appeal in the instant case (No. 151), which is the only one now before us, we shall remand the case without affirming or reversing the order appealed from to the end that further proceedings may be had as above indicated.

> *Cause remanded, without affirming or reversing the order appealed from, for further proceedings not inconsistent with this opinion, the costs of this appeal to be paid out of the proceeds of sale subject to the will of Katherine P. Leager.*