BALTIMORE GAS & ELECTRIC COMPANY
*v.* BOWERS ET AL.

[No. 89, September Term, 1959.]

338

*Decided January 22, 1960.*

*Motion for rehearing filed February 19, 1960, denied March 14, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Benjamin Chambers* and *Paul S. Clarkson,* with whom were *Alfred P. Ramsey* and *John Grason Turnbull* on the brief, for the appellant.

*Kenneth C. Proctor* and *Claude A. Hanley,* with whom were *W. Lee Thomas* and *Charles J. Hessian* on the brief, for the appellees.

HORNEY, J., delivered the opinion of the Court.

This appeal involves the second round in the controversy between the descendants of Mary Ann Burnham (the Burnhams) and the heirs of Priscilla Lee (the Lees) on one side and the Baltimore Gas and Electric Company (the company) on the other with respect to the grant of an easement by Mary Ann Burnham (the grantor) to the company across the tract of land now owned by the Burnhams and Lees as tenants in common, on which easement the company operates and maintains the electric transmission line it constructed thereon more than thirty years ago.

In the first round of this litigation, which was an ejectment suit, we held in *Burnham v. Balto. Gas & Electric Co.,* 217 Md. 507, 144 A. 2d 80 (1958), that the grant of the easement operated (by the application of the Rule in Shelley's Case) to bind the Burnhams as to an undivided one-half interest in the tract as tenants in common with the Lees but did not bind the latter who own the other undivided one-half interest.

This second case, which is a partition proceeding, was filed by the company while the ejectment suit was pending. At our suggestion the lower court stayed further prosecution of the ejectment case pending the proceedings in this case, but we declined in the first appeal to pass upon the right of the company to maintain this partition suit. In this proceeding, the company seeks to have the tract divided in kind between the Burnhams and the Lees in such manner that the Burnhams be given that moiety of the tract across which the transmission line easement extends and that the Lees be given half of the tract in value free and clear of the easement, and, in the alternative, seek a sale of the land, subject to the company's easement, and a division of the proceeds between the Burnhams and the Lees in such manner as will protect the rights of the latter as if the burden created by the easement did not exist.

After the opinion in the ejectment case had been filed the company amended its prayers for relief in this partition proceeding to ask that the Burnhams be required by mandatory order to join in the company's bill for partition (whether or not the company was entitled to maintain this action in its own right) so that the company's easement "may be perfected and preserved and so that the * * * [company] 'may receive the full benefit of its deed,' " from the grantor.

The Burnhams and Lees demurred to the amended bill on the sole ground "that under the provisions of * * * [Code (1957), Art. 16, § 154, * * * the company] is not a party in interest authorized to bring" a bill for partition. The chancellor overruled the demurrer on the ground that the company as grantee of the easement had a right in equity to compel the Burnhams to exercise their right to partition "to give the grantee the benefit of the grant." In their answer, the Burnhams and Lees denied the material allegations of the bill as amended, including the allegation that the tract should be divided into two parcels. They did not, however, specifically seek partition in kind of their respective aliquot shares.

On June 28, 1852, Mary Ann Burnham and Priscilla Lee, who were sisters, were granted the 118-acre tract of land, located in Baltimore County thirteen miles north of downtown

Baltimore City, which is the subject of this controversy, as tenants in common in fee, subject to a life estate of the surviving sister in the whole. When Priscilla died in 1861, her surviving sister, in addition to her own undivided interest in one-half of the tract in fee, had the entire possessory interest in the tract until her death in 1943. At the time of her death, Priscilla, who had not married, was survived by a son. On November 11, 1924, Mary Ann conveyed the easement in question to the company, but at that time the company did not know, nor was it advised by anyone, of an outstanding interest in the heirs of Priscilla. And, for more than twenty-five years none of the Lees, and, for more than thirteen years none of the Burnhams, made any objection to the operation and maintenance of the transmission line or asserted any unacquired or outstanding interest in the land across which the transmission line had been constructed following the grant of the easement. The southern portion of the tract, fronting about 1200 feet on Broadway Road, is fairly level and generally cleared. North of the transmission line, which crosses the tract approximately parallel to and 900 feet north of the road, the tract is wooded, hilly and traversed by several small streams of water.

One of the witnesses produced by the company, a real estate broker, was of the opinion that the tract was divisible in kind into two parcels so as to give the Lees the equivalent of one-half of the total value as if the tract was not subject to the easement, and after estimating the value of the whole, described several ways the tract could be divided between the Burnham descendants and the Lee heirs, which generally would allot the front portion to the Lees subject to a right of way for the use of the back portion to be allotted to the Burnhams. Another broker, although he found a different value, was also of the opinion that the tract could be divided into two parcels of equal value though not the same size. Both witnesses had walked over and examined the tract for the purpose of forming an opinion as to whether or not it could feasibly be divided in kind between the Burnhams and the Lees, but neither of them specifically testified that the tract could be partitioned without loss or injury. All three of the

witnesses for the Burnhams and Lees were also real estate experts. One testified that the property could not be so divided as "to allocate to each of those persons entitled" their aliquot share because the tract could not be divided into thirty-five parcels of varying sizes "without seriously damaging the market value of the whole," but he did not testify as to the feasibility of dividing the tract into two parcels. Another testified that the tract could not be divided into thirty-five parcels without loss or injury due to zoning regulations and the topography of the land. And the third witness testified that "the property could not be actually divided in any way without substantial damage to both portions" or "equally in any way into any number of parcels." However, except for the statement as to zoning and topography, none of the three stated the basis for their opinions that the tract could not be partitioned in kind.

The chancellor, being of the opinion that the "very nature of the property prevents a partition in kind without loss or injury," declined to appoint commissioners to inquire into the feasibility of partitioning the tract, and dismissed the bill.

Since we have previously decided that the Burnhams are bound by the grant of the easement [*Burnham v. Balto. Gas & Electric Co., supra*], the posture of the dispute on this appeal presents further problems of what a court of equity may do to protect the respective rights and interests of the parties.

The company in effect contends that it has a right to require a partition of the tract into two parcels of equal value and in such manner that only the Burnhams' portion would thereafter be subject to its easement; that commissioners should have been appointed to make such partition in kind; and that the Lees are estopped from objecting to the partition sought by the company. On the other hand, the Burnhams and the Lees, in opposing the position of the company, assert that a right to partition does not exist; that equity does not have jurisdiction in this case; and that the only remedy available to the company to perfect its defective title is by a condemnation suit at law.

As we see it the only questions presented on this appeal involve: (i) the right to partition and (ii) the right to have

commissioners appointed to ascertain whether the tract is susceptible of partition.

### (i). Right to Partition.

Code (1957), Art. 16, § 154, reads in pertinent part as follows:

> "The court may decree a partition of any lands, * * * or any right, interest or estate therein, * * * on the bill or petition of any joint tenant, tenant in common, or any parcener or any concurrent owner, * * * or if it appear that said lands, * * * or right, interest or estate thereon cannot be divided without loss or injury to the parties interested, the court may decree a sale thereof, and a division of the money arising from such sale among the parties, according to their respective rights * * *."

At the old common law only coparceners had a right of partition. Originally joint tenants and tenants in common could not compel others to partition. But this was remedied by the statute of 31 Hen. 8, c. 1, providing that joint tenants and tenants in common in their own right could compel other owners to make partition in the same manner as coparceners had been and were compelled to do. Walker, *Law and Practice of Partition [in England]*, p. 4 (2d ed., 1882). In these respects, the enactment of Chapter 72 of the Acts of 1785, was merely declaratory of the preexisting common law. Thus, as was stated in *Hardy v. Leager*, 212 Md. 565, 130 A. 2d 737 (1957), the right of partition in kind existed and continues to exist independent of statute. General statutory authority to decree a sale and divide the proceeds was added by Chapter 311 of the Acts of 1831, as was the inclusion of a "concurrent owner" among those entitled to partition.

Partition in kind was at common law a matter of right, except where there was no proof of title, and inconvenience or difficulty would not formerly prevail to prevent it. But under the statute—even though partition is still a matter of right—when partition in kind cannot be made without loss or injury to the parties, the court may decree a sale of the property. *Lloyd v. Gordon*, 2 H. & McH. 254 (1789); *Campbell v.*

*Lowe,* 9 Md. 500 (1856) ; *Thruston v. Minke,* 32 Md. 571 (1870) ; *Brendel v. Klopp,* 69 Md. 1, 13 Atl. 589 (1888) ; *Dugan v. Baltimore,* 70 Md. 1, 16 Atl. 501 (1889) ; *Johnson v. Hoover, infra* (1892) ; *Tolson v. Bryan,* 130 Md. 338, 100 Atl. 366 (1917) ; *Hardy v. Leager, supra* (1957).

The company in its reply brief insists that as a concurrent owner it is entitled to partition in its own right. It may be that the company has such a right. See *Harrell v. Mason,* 170 Ala. 282, 54 So. 105 (1911). Cf. *Cook v. Boehl,* 188 Md. 581, 53 A. 2d 555 (1947). But, it is not necessary for us to decide the question here. For, if we assume, without deciding, that the company is not a concurrent owner, we think that it has a right to require the Burnhams to seek partition to the end that it may enjoy the full benefits to which it is entitled under the grant of the easement.

While there is no case in this state directly in point, the holdings of the cases in other jurisdictions—though not all of them began as partition proceedings—are to the effect that a grantee of an easement from less than all of the cotenants has a right in equity to require the grantor or his heirs to seek partition in order that the grantee may enjoy the full benefits of the conveyance. In *Mee v. Benedict,* 98 Mich. 260, 57 N. W. 175 (1893), where the owners of 23/24ths of a tract of land had sold the timber rights to Mee and thereafter, together with the owner of the remaining 1/24th interest, had conveyed the whole tract to Benedict subject to such rights, it was held that Mee, though he had no property right to support a partition proceeding, had a right in equity to require his grantor to sue for partition of the land to the end that the timber rights would attach to the portion allotted to Mee's grantor. In the course of the majority opinion, it was said on pages 262 and 263:

> "[T]he only means of making that conveyance effectual to carry out the intent of the parties was for * * * [the grantor of the timber rights] to ask and obtain partition of the lands. This they had the right, and it was their duty, to do, and equity would require and compel action on their part to

that end. * * * We do not depart from the doctrine that such conveyance is void as against the cotenant, but it is void only in so far as it affects the cotenant's rights. * * * |B]ut it is not void as against the grantor, and we think it is competent, under the general equity powers of the court, to compel the grantor of a special interest to take such steps as to make his conveyance effectual."

The decision in *Charleston R.R. Co. v. Leech,* 33 S. C. 175, 11 S. E. 631 (1890), 35 S. C. 146, 14 S. E. 730 (1892), and 39 S. C. 446, 17 S. E. 994 (1893), is directly in point. There a widow, owning a one-third undivided interest in a tract of land, conveyed an easement thereover to a railroad company, and when her children, the other cotenants, brought an action for damages against the railroad, the court held that it was entitled to an order requiring partition as upon an application by the widow, directed partition commissioners to allot to the widow, if practicable, the land over which the railroad had been constructed, and held, after the widow's death, that her children were likewise bound to seek partition. There it was said [at p. 450 of 39 S. C. 446] : "where a tenant in common has undertaken to place a burden upon the common property, partition should be, if practicable, so made as to allot to such tenant in common the portion upon which the burden has been placed."[1] For other cases in accord, see *Saulsberry v. Saulsberry,* 121 F. 2d 318 (C. C. A., 6th, 1941) [conveyance of easement for railroad tract by owners of one-sixth interest in land] ; *Cook v. International, etc. R. R. Co.,* 22 S. W. 1012 (Tex. Civ. App., 1893) [ease-

---

1. The *Leech* case was not overruled by *Duke v. Postal Telegraph Cable Co.,* 71 S. C. 95, 50 S. E. 675 (1905), as the appellees suggest. On the contrary, after the decision in the *Duke* case, the principle of "equitable partition" applied in the *Leech* case was affirmed in *Jeter v. Knight,* 81 S. C. 265, 62 S. E. 259 (1908), and *Williams v. Bruton,* 121 S. C. 30, 113 S. E. 319 (1922); and by the Fourth Circuit, applying South Carolina law, in *Highland Park Mfg. Co. v. Steele,* 235 Fed. 465 (C. C. A., 4th, 1916), *cert. den.* 242 U. S. 640 (1916), and *Burdine v. Southern Utilities Co.,* 11 F. (2d) 29 (C. C. A., 4th, 1926).

ment for railroad right of way granted by two of several co-tenants]; *Harrell v. Mason*,[2] *supra* (1911) [grant of timber rights from one of two cotenants]; and *Pellow v. Arctic Mining Co.*, 164 Mich. 87, 128 N. W. 918 (1910) [grant of mineral rights from one of two cotenants]. Cf. *Gittings v. Worthington*, 67 Md. 139, 9 Atl. 228 (1887); *Dugan v. Baltimore*, *supra* (1889). See also *Whitton v. Whitton*, 38 N. H. 127 (1859); *Hitt v. Caney Fork Gulf Coal Co.*, 124 Tenn. 334, 139 S. W. 693 (1911); *Jones v. Berg*, 105 Wash. 69, 177 Pac. 712 (1919); *Simpson-Fell Oil Co. v. Stanolind Oil & Gas Co.*, 136 Tex. 158, 125 S. W. 2d 263 (1939); *Thomas v. Southwestern Settlement, etc., Co.*, 132 Tex. 413, 123 S. W. 2d 290 (1939); *Taylor v. Grange*, L. R. 13 C. D. 223 (1879).

We hold that the company has a right to require the Burnhams to seek partition in kind.

(ii). Right to Appointment of Commissioners.

On the question of whether the tract is partitionable in kind, there was evidence to the effect that it was feasible to divide it into two parcels, one to be allotted to the Burnhams subject to the company's easement and the other to the Lees subject to a right of way to and from the public road. Because the Burnhams and Lees did not want partition, they produced testimony to the effect that the tract could not be divided into thirty-five parcels so as to give each of the parties having an interest therein his or her aliquot share without loss or injury, but other than a mere statement that the zoning regulations and the topography of the land would prevent partition in kind, there was no evidence as to why it could not be so divided had they desired partition into aliquot shares. Furthermore, there is nothing in the pleadings, other than a general denial, to indicate whether the Burnhams and Lees actually opposed partition, but the record as a whole leaves no doubt that they object to partition in kind whether

---

2. Nor was the *Harrell* case overruled by *Shepard v. Mt. Vernon Lumber Co.*, 192 Ala. 322, 68 So. 880 (1915), for in the latter case the contractual time for cutting timber having expired, the owner of the timber rights was not entitled to sue for partition.

it be into two parcels or thirty-five. However, a mere objection by dissentient parties without more is not a good reason for denying partition.

In seeking a division of the tract into two parcels, the company bases its claim to partition in kind on two premises. First, it insists that since the Burnhams are under compulsion to sue for partition on behalf of the company they are precluded from objectiong to a division of the tract into two parcels, and secondly, that the Lees are estopped from objecting to a fair and equitable partition because they are precluded from taking advantage of their protracted silence and acquiescence. In seeking to require the company to institute condemnation proceedings in a court of law to perfect its defective title to the easement, the Burnhams and Lees contend that a court of equity is not the proper forum because a partial partition cannot be had without the consent of all the parties in interest.

While it is true that partition in kind may not be defeated except upon a showing of loss or injury to the parties, *Thruston v. Minke, supra; Rowe v. Gillelan,* 112 Md. 108, 76 Atl. 500 (1910); *Hardy v. Leager, supra,* there is no doubt that in this country the weight of authority is to the effect that there may not be a partial partition in kind without the consent of the parties concerned. In *Gaither v. Fraser,* 289 Ky. 308, 158 S. W. 2d 434 (1942), a partial partition was allowed when it did not imperil the interest of other owners. In other jurisdictions partial partition without consent has been allowed under permissive statutory provisions. See, for instance, *Poundstone v. Everly,* 31 Pa. 11 (1854); *Eddie v. Eddie,* 138 Mo. 599, 39 S. W. 451 (1897); *Baldwin v. Foster,* 157 Cal. 643, 108 Pac. 714 (1910); *Baumgartner v. Baumgartner,* 67 S. W. 2d 154 (Tenn. App., 1933); *Feamster v. Feamster,* 123 W. Va. 353, 15 S. E. 2d 159 (1941); *Mello v. Mello,* 322 Mass. 68, 76 N. E. 2d 9 (1947); *Newson v. Johnson,* 255 S. W. 2d 33 (Ky., 1953). Maryland, along with the majority, seemingly requires consent if there is to be a partial partition. This is so because "[t]he object of partition is a division of the property between the several co-tenants so as to put an end to the co-tenancy, and to vest

in each person a sole estate in a specific part or allotment of the property." *Dugan v. Baltimore, supra,* at p. 6.

We agree that the Burnhams are precluded from objecting to the partial partition sought by the company. *Charleston R. R. Co. v. Leech, supra.* But we do not agree that the Lees are estopped from so objecting. We have held in several recent cases that mere silence, standing alone, does not generally have the effect of an estoppel. See, for instance, *Alvey v. Alvey,* 220 Md. 571, 155 A. 2d 491 (1959); *Mohr v. Universal C. I. T. Corp.,* 216 Md. 197, 140 A. 2d 49 (1958), and the cases therein cited. In the *Alvey* case we said "if the acquiescence alleged is to constitute an estoppel, it must be shown that the classical elements necessary to establish an estoppel *in pais* are present." We find no evidence in this case to support the claimed estoppel.

However, that does not mean that the company is not entitled to partition in kind if it is feasible. Under the express provisions of § 154, *supra,* any tenant in common generally has the right to secure separate enjoyment of his interest either by partition or by sale and a division of the proceeds. *Gunter v. Gunter,* 187 Md. 228, 49 A. 2d 454 (1946). The evidence as to partitionability was meager, it is true, but the weight of such as was produced was to the effect that the tract might feasibly be divided in kind between the Burnhams and the Lees. Other than the unsupported assertions that it was not divisible, there was no substantial evidence that partition was impossible. A court may not assume without clear and convincing proof that an unimproved tract of land is not susceptible of partition. Cf. *Watson v. Godwin,* 4 Md. Ch. 25 (1851), where it was held, in the absence of sufficient proof that a sale would be to the interest and advantage of all the parties, that the case should "stand over" so that the bill for a sale could, by amendment, be converted into a bill for partition. In the case at bar, since there was a possibility that the tract could be partitioned in kind without loss or injury, the chancellor should have appointed commissioners to ascertain whether the land was susceptible of partition, and in so doing should have instructed them that a right of way may be reserved for equality and that the court may award

a sum of money to be paid for the same purpose. In *Johnson v. Hoover,* 75 Md. 486, 492, 23 Atl. 903, 905 (1892), it was held that "[t]he right of partition in kind was an undeniable right if feasible." See also *Campbell v. Lowe, supra* (1856) ; *Tomlinson v. McKaig,* 5 Gill 256 (1847). Clearly, the chancellor should not have dismissed the bill.

In its bill, the company also prayed for a sale of the tract subject to its easement in the event partition in kind was not feasible, but both sides chose to ignore that possibility. There is, therefore, no question before us on this appeal with respect to a sale and an equitable division of the proceeds should partition in kind be impracticable without loss or injury; nor is there a corollary question as to who should justly compensate the Lees for the depreciation, if any, caused by or resulting from the burden created by the granting of the easement.

For the reasons hereinbefore assigned, the order of the chancellor must be reversed and the case remanded for further proceedings consistent with this opinion.

*Order reversed and case remanded for further proceedings consistent with this opinion, the appellees to pay the costs.*